## IN THE UNITED STATE DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

PAMELA MILLER,

      Plaintiff,

v.                                       **Case No.: 1:17-CV-00271**

CINCINNATI INSURANCE COMPANY,

      Defendant.

### NOTICE OF REMOVAL

Defendant The Cincinnati Insurance Company ("Cincinnati"), improperly named as Cincinnati Insurance Company, by and through its counsel of record, Chapman and Charlebois, P.C. (Donna L. Chapman and Jessica C. Singer), hereby files this Notice of Removal pursuant to 28 U.S.C. §§ 1331, 1441 and 1446, and in support thereof, states as follows:

1.      Plaintiff Pamela Miller ("Plaintiff") filed her Complaint for Declaratory Judgment, Breach of Contract and Negligence ("Complaint") in the Eighth Judicial District, Taos County, State of New Mexico, in Cause No. D-820-CV-2017-00013 (hereinafter "State Court Action") on January 6, 2017.  (*See* Plaintiff's Complaint, attached hereto as Exhibit A).

2.      In her Complaint, Plaintiff alleges she is a resident of the State of New Mexico. (*Id.* at ¶ 1).

3.      Plaintiff named Defendant The Cincinnati Insurance Company as the only Defendant.

4.     Defendant asserts The Cincinnati Insurance Company is incorporated and its principal place of business is in the state of Ohio.

5.     Diversity of citizenship is present in this matter as set forth in 28 U.S.C. § 1332(a) and 28 U.S.C. § 1441(b)(2).

6.     Cincinnati accepted service on February 3, 2017.  (*See* Exhibit B).

7.     Less than thirty (30) days have passed since Cincinnati accepted service of the initial pleadings on this matter.

8.     As Cincinnati has accepted service and is the only Defendant in this matter, 28 U.S.C. § 1446(b)(2)(A) is satisfied.  (*See* Register of Actions for the State Court Action, hereto attached as Exhibit C).

9.      To confer subject matter jurisdiction on this Court based on diversity of citizenship, the amount in controversy must exceed the sum or value of $75,000.00, exclusive of interest and cost. 28 U.S.C. §1332(a). Where a complaint does not contain dispositive allegations of the amount in controversy, the jurisdictional amount is determined by the allegations in the underlying complaint. *See e.g., Laughlin v. Kmart Corp*, 50 p.3d, 871, 873 (10th Cir. 1995). Calculations of the amount in controversy include both compensatory and punitive damages. *See, e.g., Bell v. Preferred Life Assur. Soc'y* 320 U.S. 238, 240 (1943); *Watson v. Blakenship,* 30 F.3d 383, 386 (10 Cir.1994). This calculation also includes attorney's fees. *See Miera v. Dairyland Ins. Co.,* No. 96-0136-M, mem.Op. (D.N.M. Feb. 28, 1996)(denying remand of removed action based on availability of attorney's fees under New Mexico Unfair Claims Practice Act and Unfair Trade Practices Act. *See also 14A Wright v. Miller, Federal Practice and Procedure,* §3712, at 176-78, and authorities cited therein; *Foret v. Southern Farm Bureau Life Ins.*

*Co.,* 918 F. 2d 534, 537 (5 Cir. 1990). The calculation also includes treble damages claims.

10.     Consistent with the allegations in Plaintiff's Complaint, dated January 6, 2017, the amount in controversy exceeds the jurisdictional amount of $75,000. (See Complaint ¶17, 18, 22, and the Wherefore paragraph). Plaintiff's Complaint seeks an award of punitive damages (Complaint ¶17 and the Wherefore paragraph) While The Cincinnati Insurance Company denies liability to Plaintiff for compensatory or punitive damages, Plaintiff's claim for punitive damages, could exceed the jurisdiction threshold for diversity jurisdiction.    Additionally, Plaintiff's Complaint seeks an award of attorney's fees. (Complaint, ¶18, 22 and the Wherefore paragraph).

11.   Upon information and belief, Plaintiff will likely seek in excess of $50,000 in attorney's fees through the trial of this matter

12.   This case may be removed to this Court by Cincinnati pursuant to the provisions of 28 U.S.C. §§ 1441(b) and 1446.

13.   By and through this Notice of Removal, Cincinnati removes all claims asserted against it on the basis of diversity jurisdiction, which is conferred upon this Court pursuant to 28 U.S.C. §§ 1332 and 1441.

14.   Pursuant to 28 U.S.C. § 1446(d), written notice of the filing of this Notice of Removal is being concurrently served upon the Plaintiff on this date.

15.   Pursuant to 28 U.S.C. § 1446(d), Cincinnati is concurrently filing a Notice of Filing of Removal in the State Court Action, a copy of which is hereto attached as Exhibit D.

16.   In addition to the Notice of Filing Notice of Removal in the State Court Action, Cincinnati is concurrently filing an Entry of Appearance in the State Court Action on this date, a copy of which is hereto attached as Exhibit E.

17.   Pursuant to 28 U.S.C. § 1446(a) and D.N.M.LR-Civ. 81.1(a), all process, pleadings, and orders from the State Court Action will be filed with this Court in a separate Transmittal of State Court Record within twenty-eight days (28) of this Notice.

18.   A Civil Cover Sheet for this Court is hereto attached as Exhibit F.

**WHEREFORE**, the removing Defendant gives notice the above-styled action, which was pending in the Eighth Judicial District, Taos County, State of New Mexico, as Cause No. D-820-CV-2017-00013 is removed to this Court.

Respectfully submitted,

**CHAPMAN AND CHARLEBOIS, P.C.**

*/s/Jessica C. Singer*
Donna L. Chapman
Jessica C. Singer
P.O. Box 92438
Albuquerque, NM 87199
505-242-6000
donna@cclawnm.com
jessica@cclawnm.com
*Attorneys for Defendant The Cincinnati Insurance Company*

4

I HEREBY CERTIFY that on the 28th day of February, 2017, I filed the foregoing electronically through CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Robert Crollett
Crollett & McDowell, P.A.
P.O. Box 1683
Taos, NM 87571
rc@cmlawnm.com
*Attorney for Plaintiff*

*/s/Jessica C. Singer*
Jessica C. Singer

EIGHTH JUDICIAL DISTRICT COURT
TAOS COUNTY NM
FILED IN MY OFFICE
1/6/2017 2:29:18 PM
BERNABE P. STRUCK
DISTRICT COURT CLERK
Vicki Vigil

IN THE EIGHTH JUDICIAL DISTRICT COURT
COUNTY OF TAOS
STATE OF NEW MEXICO

**CAUSE NO.:**   D-820-CV-2017-00013

**PAMELA MILLER,**

      Plaintiff,

vs.

**CINCINNATI INSURANCE COMPANY,**

      Defendant.

---

### COMPLAINT FOR DECLARATORY JUDGMENT, BREACH OF CONTRACT AND NEGLIGENCE

Plaintiff, by and through her attorney, Robert Crollett, Crollett & McDowell, P.A., for her causes of action against the Defendant Cincinnati Insurance Company, states:

### COMMON FACTUAL ALLEGATIONS

1.      Plaintiff, Pamela Miller is a resident of the State of New Mexico.

2.      Defendant Cincinnati Insurance Company is an insurer as defined by New Mexico law and is organized and existing under the laws of a state other than New Mexico, but is authorized to do business, and is conducting business, within the State of New Mexico.

3.      At all times pertinent hereto Plaintiff and Defendant were insured and insurer, respectively, under a valid and binding contract for insured numbered A01 06521802 which insured Plaintiff's 2004 Hyundai Elantra GLS and which provided her coverage for injuries and damages suffered through the acts or omissions of underinsured motorists.  A copy of the insurance agreement is attached hereto as **Exhibit "1"**.

4.      On June 1, 2012, said insurance policy was in full force and effect.



1

5.     On June 1, 2012, in Taos County, New Mexico, during the effective dates of the aforementioned policy, Plaintiff was struck by an intoxicated, underinsured driver, Stephen Salandre, while Plaintiff was driving in her insured vehicle resulting in injuries and damages to her.  A Complaint for Damages for Personal Injury was filed against Stephen Salandre on July 8, 2014 in Taos County District Court Cause No.: D-820-CV-2014-00247.

6.     On October 22, 2015, Cincinnati Insurance consented to the Plaintiff's settlement with Stephen Salandre's insurance company, GEICO.

7.     Plaintiff has provided all requested information and documentation to the Defendant.

8.     Plaintiff has otherwise performed all conditions precedent to her right to receive payment of insurance proceeds under the aforementioned policy to compensate her for her damages and losses caused by Stephen Salandre's negligence.

## DECLARATORY JUDGMENT

9.     Plaintiff incorporates by reference the preceding paragraphs as though fully set forth herein.

10.     Defendant has failed to provide reasonable offers to settle Plaintiff's demands for compensation for her injuries and damages under her insurance policy.

11.     An actual controversy exists between the parties concerning their respective rights, status, and obligations under the facts and circumstances of this case and the insurance policy involved herein, sufficient to satisfy the requirements of the Declaratory Judgment Act, §41-6-1 et seq. NMSA.

12.     Plaintiff requests this Court review the insurance contract, the facts and circumstances, the applicable law and enter its Order determining and awarding the amount of

damages incurred by the Plaintiff, declaring the parties respective rights and obligations, and directing their behavior accordingly, all as permitted by the Declaratory Judgment Act.

## BREACH OF CONTRACT

13.     Plaintiff incorporates by reference the preceding paragraphs as though fully set forth herein.

14.     Plaintiff was insured for her damages caused by the accident of June 1, 2012.

15.     Defendant has failed and refused to pay these damages pursuant to Plaintiff's policy.

16.     Defendant has breached its contractual obligation to pay the damages incurred by its insured, Plaintiff Pamela Miller.

17.     As a direct and proximate result of the June 1, 2012 accident, Plaintiff sustained damages, including but not limited to medical bills, pain and suffering, lost wages, loss of enjoyment of life, loss of household services, punitive damages, attorney's fees, and costs of suit, which Defendant has failed to pay in accordance with its contractual and legal obligations.

18.     Plaintiff is entitled to recover her attorney's fees and costs in pursuing this action pursuant to §39-2-1 NMSA.

## NEGLIGENCE

19.     Plaintiff incorporates by reference the preceding paragraphs as though fully set forth herein.

20.     Defendant owed Plaintiff statutory and common law duties to insure that Plaintiff was covered by the insurance she requested, expected and for which she paid.

3

21.     Defendant breached its statutory and common law duties to Plaintiff by failing to effectuate Plaintiff's expectation of coverage as alleged herein.

22.     As a direct and proximate result of Defendant's negligence and/or mistakes, Plaintiff has been damaged at an amount to be proven at trial, including but not limited to attorney's fees and costs of suit pursuant to §39-2-1 NMSA.

WHEREFORE, Plaintiff requests relief of this Court as follows:

A.     For the Court's Order determining the rights and liabilities of the respective parties as to policy proceeds due and payable under the policy of insurance between Plaintiff and Defendant Cincinnati Insurance Company and directing the parties to act in accordance therewith.

B.     For an award in favor of Plaintiff and against Defendant Cincinnati Insurance Company in an amount reasonable to compensate Plaintiff for all damages, injuries, losses, attorney's fees, costs and interest recoverable under the law, including pre-judgment interest.

C.     For interest on all sums awarded hereunder from the date of this Complaint until paid in full.

D.     For such other and further relief as the Court deems proper and just.

4

CROLLETT & McDOWELL, P.A.

By:

ROBERT CROLLETT
P.O. Box 1683
Taos, New Mexico   87571
(575) 758-1155
(575) 758-3137 (fax)
rc@cmlawnm.com



**THE CINCINNATI INSURANCE COMPANY**

**POLICY NUMBER**
A01 0652180
Image 1

## AUTO DECLARATIONS

Policy Period: From 11/29/2011 To 11/29/2012
12:01 a.m. Standard Time at the Address of the Named Insured

New Business

A01 0652180
**Named Insured & Address**
Pamela A Miller
6587 W KNOLLWOOD CIR
LOVELAND, OH 45140-8159

**Please refer any questions to your agent:**
Clark Theders Insurance Agency Inc
9938 Crescent Park Drive
PO BOX 62386
CINCINNATI, OH 45263-0386
(513)779-2800
**Agency** 34053     **Producer**   Jean Mabry
3

County of HAMILTON

Insurance is provided where a premium or 'Included' is shown for the coverage.

PAYOR - Insured

| | |
|---|---|
| Billing Method: | Direct Bill |
| Current Pay Plan: | Quarterly Pay |
| Initial Installment: | $233.00 |
| **Remaining Installments:** | |
| 02/29/2012 | $231.00 |
| 05/29/2012 | $231.00 |
| 08/29/2012 | $231.00 |
| **Total Premium:** | $926.00 |

THIS IS NOT A BILL. You will receive a separate invoice if a premium charge or return is due.

**YOUR COVERED AUTOS**

| Veh | Ter | Year | Vehicle Description | Vehicle ID Number | Type Veh | Class | Stated Amount | Symbol (Other Than Collision / Collision), Rating Basis Value, Current Market Value |
|---|---|---|---|---|---|---|---|---|
| 1 | 2 | 2004 | HYUNDAI ELANTRA GLS/ | KMHDN56D64U103587 | Priv Pass | 80211S | | 16 |

Garaging Location Veh 1 : 10929 FALLSTONE DR CINCINNATI, OH 45246-2373 HAMILTON
C9

This is a true and certified copy of this sheet.
Dave Nichols
Vice President, AIR, CPCU

By: _____

**EXHIBIT**
**1**

DDA (4/08)

11/30/2011
HOME OFFICE COPY

A01 0652180

1 of 3



### THE
## CINCINNATI INSURANCE COMPANY

## AUTO
## DECLARATIONS

**POLICY NUMBER**
A01 0652180

Image 1

**Policy Period: From 11/29/2011 To 11/29/2012**
12:01 a.m. Standard Time at the Address of the Named Insured

New Business

| COVERAGES AND LIMITS OF INSURANCE | | |
|---|---|---|
| **COVERAGES** | 2004 HYUNDAI ELANTRA GLS | |
| | **LIMIT** | **PREMIUM** |
| A1 Bodily Injury | | $204.00 |
| Each Person | $250,000 | |
| Each Accident | $500,000 | |
| Property Damage Liability | | $166.00 |
| Each Accident | $100,000 | |
| B1 Medical Payments | $10,000 Full | $29.00 |
| C1 Uninsured Motorists (BI Only) | | $52.00 |
| Each Person | $250,000 | |
| Each Accident | $500,000 | |
| Uninsured Motorists (PD Only) | | $11.00 |
| Each Accident | $25,000 | |
| D  Damage To Your Auto | | |
| Other Than Collision | | $98.00 |
| Actual Cash Value Less Deductible | $500 | |
| Collision | | $292.00 |
| Actual Cash Value Less Deductible | $500 | |
| **ADDITIONAL COVERAGES** | | |
| | **LIMIT** | **PREMIUM** |
| Transportation Expense | | Included |
| Per Day/Maximum | $50/$1,500 | |
| Towing and Labor Costs | | $4.00 |
| Each Disablement | $150 | |
| Personal Auto Plus Coverage | | Flat Charge |
| **TOTAL** | | $856.00 |

The following coverage(s) apply to all eligible vehicle(s) and/or individual(s) identified on the corresponding endorsement(s):

| Coverage | Premium |
|---|---|
| Personal Auto Plus Coverage | $70.00 |



### THE
## CINCINNATI INSURANCE COMPANY

## AUTO
## DECLARATIONS

**POLICY NUMBER**
A01 0652180
**Image 1**

**Policy Period: From 11/29/2011 To 11/29/2012**
12:01 a.m. Standard Time at the Address of the Named Insured

**New Business**

**The following credits have been applied to your policy:**

Anti-Theft Discount
Package Credit
Passive Restraint Credit
Preferred Risk
Special Large Deductible Credit

| | |
|---|---|
| **TOTAL POLICY PREMIUM** | **$926.00** |

**OTHER COVERAGES AND ENDORSEMENTS**

| | |
|---|---|
| Personal Auto Policy FA4000 | FA4000T (4/08) |
| Uninsured Motorists Coverage for Bodily Injury and Property Damage Split Limits Ohio | CPA1023OH (10/11) |
| Amendment of Policy Provisions - Ohio | CPA1094OH (10/11) |
| Special Notice - Ohio | IP 407 OH (3/92) |
| Notice of Privacy Practices | MI1659 (4/09) |
| Personal Auto Plus Endorsement | CPA1419 (4/11) |
| Special Large Deductible Endorsement | HOA900 (1/08) |
| To Our Policyholders | MI1528OH (10/11) |

# AUTO WORK SHEET

Insured:  Pamela A Miller

Policy Number:   A01 0652180

| | Driver Name | License Number | State | Date of Birth | Sex | Marital Status |
|---|---|---|---|---|---|---|
| 1 | PAMELA A MILLER | XXXX6592 | OH | 10/29/1955 | F | Single |
| 2 | | | | | | |
| 3 | | | | | | |
| 4 | | | | | | |
| 5 | | | | | | |
| 6 | | | | | | |
| 7 | | | | | | |
| 8 | | | | | | |

| | Principal or Occasional Operator | Year | Make | Model | At School w/o Vehicle | Driver Training | Good Student | Defensive Driver |
|---|---|---|---|---|---|---|---|---|
| 1 | Principal | 2004 | HYUNDAI | ELANTRA G | No | No | No | No |
| 2 | | | | | | | | |
| 3 | | | | | | | | |
| 4 | | | | | | | | |
| 5 | | | | | | | | |
| 6 | | | | | | | | |
| 7 | | | | | | | | |
| 8 | | | | | | | | |

| Vehicle Number | Year | Make | Model | CC's | Anti-Theft Devices - Active - Passive | Passive Restraint - Driver Side Only - Both Front |
|---|---|---|---|---|---|---|
| 1 | 2004 | HYUNDAI | ELANTRA G | None | Alarm Only | Both Front |

MI1755 (4/08)

# PERSONAL AUTO POLICY FA4000

## TABLE OF CONTENTS

| | | Beginning on Page |
|---|---|---|
| | **DECLARATION PAGE** | |
| | Your Name and Address | |
| | Your Auto(s) and / or Trailer(s) | |
| | Policy Period | |
| | Coverage and Amounts of Insurance | |
| | **AGREEMENT** | 1 |
| | **DEFINITIONS** | 1 |
| **PART A** | **LIABILITY COVERAGE** | 2 |
| | Insuring Agreement | 2 |
| | Supplementary Payments | 3 |
| | Exclusions | 3 |
| | Limit of Insurance | 5 |
| | Out of State Coverage | 6 |
| | Financial Responsibility Required | 6 |
| | Other Insurance | 6 |
| **PART B** | **MEDICAL PAYMENTS COVERAGE** | 6 |
| | Insuring Agreement | 6 |
| | Exclusions | 7 |
| | Limit of Insurance | 7 |
| | Other Insurance | 8 |
| **PART C** | **UNINSURED MOTORISTS COVERAGE** | 8 |
| **PART D** | **COVERAGE FOR DAMAGE TO YOUR AUTO** | 8 |
| | Insuring Agreement | 8 |
| | Transportation Expenses | 9 |
| | Towing and Labor Costs Coverage | 9 |
| | Exclusions | 9 |
| | Limit of Insurance | 11 |
| | Payment of Loss | 11 |
| | No Benefit to Bailee | 11 |
| | Other Insurance | 11 |
| | Appraisal | 11 |
| | Loss Payable | 11 |
| **PART E** | **DUTIES AFTER AN ACCIDENT OR LOSS** | 12 |
| | General Duties | 12 |
| | Additional Duties for Coverage for Damage to Your Auto | 12 |
| **PART F** | **GENERAL PROVISIONS** | 12 |
| | Bankruptcy | 12 |
| | Changes | 12 |
| | Legal Action Against Us | 13 |
| | Our Right to Recover Payment | 13 |
| | Policy Period and Territory | 13 |
| | Termination | 13 |
| |    Cancellation | 13 |
| |    Nonrenewal | 14 |
| |    Automatic Termination | 14 |
| |    Other Termination Provisions | 14 |
| | Transfer of Your Interest in This Policy | 14 |
| | Two or More Auto Policies | 15 |
| | Fraud | 15 |
| | Choice of Law | 15 |
| | Insured's Representative Clause | 15 |

Your auto insurance policy is a legal contract between you and your insurance company.

READ YOUR POLICY CAREFULLY. The Table of Contents provides only a brief outline of some of the important features of your policy. Only the actual policy provisions will control coverage. The policy itself sets forth, in detail, the rights and obligations of both "you" and "your" insurance company. IT IS THEREFORE IMPORTANT YOU READ YOUR POLICY.

FA4000T (4/08)

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# PERSONAL AUTO POLICY

## PROVISIONS

## AGREEMENT

In return for payment of the premium and subject to all the terms of this policy, "we" agree with "you" as follows:

## DEFINITIONS

Throughout this policy, "you" and "your" refer to:

1. The named insured shown in the Declarations; and

2. The spouse if a resident of the same household.

If the spouse ceases to be a resident of the same household during the policy period or prior to the inception of this policy, the spouse will be considered "you" and "your" under this policy but only until the earlier of:

1. The end of 90 days following the spouse's change of residency;

2. The effective date of another policy listing the spouse as a named insured; or

3. The end of the policy period.

"We", "us" and "our" refer to the Company providing this insurance.

For purposes of this policy, a private passenger type auto shall be deemed to be owned by a person if leased:

1. Under a written agreement to that person; and

2. For a continuous period of at least 3 months.

Other words and phrases are defined as follows:

"Bodily Injury" means bodily harm, sickness or disease, including death that results therefrom.

"Business" includes, but is not limited to, trade, profession or occupation.

"Collision" is defined in Part D.

"Covered person" is defined in Part A.

"Property damage" means physical injury to, destruction of or loss of use of tangible property that has been physically damaged.

"Nonowned auto" means a vehicle not owned by or furnished or available for the regular use of "you" or any "family member" while in the care, custody or control of a "covered person".

"Family member" means a person related to "you" by blood, marriage or adoption who is a resident of "your" household. This includes a ward or foster child.

"Occupying" means in, upon, getting in or out, getting on or off.

"Trailer" means a vehicle designed to be pulled by a:

1. Private passenger auto; or

2. Pickup or van.

It also means a farm wagon or farm implement while towed by a vehicle listed in 1. or 2. above.

"Your covered auto" means:

1. Any vehicle shown in the Declarations, including any owned by "your" living trust.

2. Any of the following types of vehicles on the date "you" or "your" living trust becomes the owner:

   a. A private passenger auto; or

   b. A pickup or van.

FA4000T (4/08)

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

This Provision (2.) applies only if:

a. The vehicle "you" or "your" living trust acquires is not already shown in the Declarations;

b. "You" or "your" living trust acquires the vehicle during the policy period;

c. "You" ask "us" to insure it within 30 days after the "your" or "your" living trust becomes the owner; and

d. With respect to a pickup or van, no other insurance policy provides coverage for that vehicle.

If the vehicle acquired by "you" or "your" living trust replaces one shown in the Declarations, it will have the same coverage as the vehicle it replaced. "You" must ask "us" to insure a replacement vehicle within 30 days only if:

a. "You" wish to add or continue Coverage for Damage to "Your" Auto; or

b. It is a pickup or van used in any "business" or occupation, other than farming or ranching.

If the vehicle acquired by "you" or "your" living trust is in addition to any shown in the Declarations, it will have the broadest coverage "we" now provide for any vehicle shown in the Declarations.

If neither the vehicle being replaced or any other covered auto on "your" policy has Part D – Coverage For Damage To Your Auto, "we" will provide Collision and Other Than Collision coverage for the replacement or additional vehicle owned by "you" or "your" living trust subject to a $250 deductible for a period of 30 days after "you" or "your" living trust becomes the owner. If "you" do not notify "us" within 30 days after "your" or "your" living trust becomes the owner of "your" intention to add physical damage coverage for the acquired vehicle, this physical damage coverage will expire.

3. Any "trailer" "you" or "your" living trust own.

4. Any auto or "trailer" "you" or "your" living trust do not own while used as a temporary substitute for any other vehicle described in this definition of "your" covered auto" which is out of normal use because of its:

a. Breakdown;

b. Repair;

c. Servicing;

d. Loss; or

e. Destruction.

## PART A – LIABILITY COVERAGE

### INSURING AGREEMENT

When a "covered person" becomes legally responsible because of an auto accident or for physical damage to a "nonowned auto", "we" will pay for:

A. "Bodily injury";

B. "Property damage"; or

C. "Property damage" to a "nonowned auto":

1. When there is a written contract, "we" will pay for damage according to the terms of the contract.

2. In the absence of a written contract, "we" will pay in excess of any other applicable coverage.

Prejudgment interest awarded against a "covered person" on that part of any judgment "we" become obligated to pay and which falls within the applicable limit of insurance shown in the Declarations. If "we" make an offer to pay the applicable limit of insurance, "we" will not pay any prejudgment interest that is based on the period of time after the offer. "We" will settle or defend, as "we" consider appropriate, any claim or suit asking for these damages. In addition to "our" limit of insurance, "we" will pay all defense costs "we" incur. "Our" duty to settle or defend ends when "our" limit of insurance for this coverage has been tendered for settlement or payment of judgment. "We" have no duty to defend any suit or settle any claim for "bodily injury" or "property damage" not covered under this policy.

"Covered person" as used in this policy means:

1. "You" or any "family member" for the ownership, maintenance or use of any auto (including a motor-home, truck or motorcyde)" or "trailer".

2. "Your" Living Trust(s) (also known as Inter Vivos Trusts), including any natural person named as executor, administrator or trustee of "your" estate or living trust, but only with respect to "your" covered auto", as defined in this policy.

3. Any person using "your covered auto".

4. For "your covered auto", any person or organization but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under this Part.

5. For any auto (including a motorhome, truck or motorcycle) or "trailer", other than "your covered auto", any person or organization but only with respect to legal responsibility for acts or omissions of "you" or any "family member" for whom coverage is afforded under this Part. This Provision (5.) applies only if the person or organization does not own or hire the auto or "trailer".

## SUPPLEMENTARY PAYMENTS

"We" will pay on behalf of a "covered person":

1. Up to $500 for the cost of bail bonds required because of an accident, including related traffic law violations. The accident must result in "bodily injury" or "property damage" covered under this policy.

2. Premiums on appeal bonds and bonds to release attachments in any suit "we" defend.

3. All interest awarded against the "covered person" on that part of any judgment that is within the applicable limits of insurance which "we" become obligated to pay in a suit we defend that accrues after entry of the judgment and before "we" have paid, offered to pay or deposited in court the part of the judgment which we are obligated to pay.

4. Up to $250 a day for loss of earnings, but not other income, because of attendance at hearings or trials at "our" request.

5. The sum of $500 if "you" die within 30 days from "bodily injury" sustained as a direct result of "collision" or upset while riding in "your covered auto". If both "you" and "your" spouse die, $500 will be paid separately for each. Death must be caused solely through external, violent and accidental means. Payment will be made to the surviving spouse, the next of kin, or the legal representative of either, as the company may elect.

6. Other reasonable expenses incurred at "our" request.

These payments will not reduce the limit of insurance.

## EXCLUSIONS

A. "We" do not provide Liability Coverage for any "covered person":

1. Who expected or intended to cause "bodily injury" or "property damage" or whose intentional or criminal acts may have reasonably been expected to result in "bodily injury" or "property damage".

2. For "property damage" to property owned or being transported by that "covered person".

3. For "property damage" to property:

    a. Rented to;

    b. Used by; or

    c. In the care of;

    that "covered person".

This Exclusion (A.3.) does not apply to "property damage" to:

    a. A residence or private garage; or

    b. Any of the following type vehicles not owned by or furnished or available for the regular use of "you" or any "family member":

        (1) Private passenger autos;

        (2) "Trailers";

        (3) Pickups, vans, or

(4) Trucks less than 26,000 pounds gross vehicle weight.

4. For "bodily injury" to an employee of that "covered person" during the course of employment. This Exclusion (A.4.) does not apply to "bodily injury" to a domestic employee unless workers' compensation benefits are required or available for that domestic employee.

5. For that "covered person's" liability arising out of the ownership or operation of a vehicle while it is being used as a public or livery conveyance. This Exclusion (A.5.) does not apply to a share-the-expense car pool.

6. While employed or otherwise engaged in the "business" of:

   a. Selling;

   b. Repairing;

   c. Servicing;

   d. Storing; or

   e. Parking;

   vehicles designed for use mainly on public highways. This includes road testing and delivery. This Exclusion (A.6.) does not apply to the ownership, maintenance or use of "your covered auto" by:

   a. "You";

   b. Any "family member"; or

   c. Any partner, agent or employee of "you" or any "family member".

7. Maintaining or using any vehicle while that "covered person" is employed or otherwise engaged in any "business" (other than farming or ranching) not described in Exclusion (A.6.). This Exclusion (A.7.) does not apply to the maintenance or use of a:

   a. Private passenger auto;

   b. Pickup or van; or

   c. "Trailer" used with a vehicle described in a. or b. above.

8. Using a vehicle without a reasonable belief that person is entitled to do so.

9. For "bodily injury" or "property damage" for which that "covered person":

   a. Is an insured under a nuclear energy liability policy; or

   b. Would be an insured under a nuclear energy liability policy but for its termination upon exhaustion of its limit of insurance.

A nuclear energy liability policy is a policy issued by any of the following or their successors:

   a. Nuclear Energy Liability Insurance Association;

   b. Mutual Atomic Energy Liability Underwriters; or

   c. Nuclear Insurance Association of Canada.

10. For bodily injury to "you" or any "family member".

B. "We" do not provide Liability Coverage for the ownership, maintenance or use of:

   1. Any motorized vehicle:

      a. Having fewer than four wheels (except for a motorcycle as owned, maintained or used by a "covered person"); or

      b. Which is designed mainly for use off public roads.

   This Exclusion (B.1.) does not apply:

   While such vehicle is being used by a "covered person" in a medical emergency; or to any "trailer".

2.  Any vehicle, other than "your covered auto", which is:

    a.  Owned by "you"; or

    b.  Furnished or available for "your" regular use.

3.  Any vehicle, other than "your covered auto", which is:

    a.  Owned by any "family member"; or

    b.  Furnished or available for the regular use of any "family member".

However, this Exclusion (B.3.) does not apply to "you" while "you" are maintaining or "occupying" any vehicle which is:

    a.  Owned by a "family member"; or

    b.  Furnished or available for the regular use of a "family member".

4.  Any motorized vehicle while:

    a.  Operated in, or in practice or preparation for, any demolition, racing or speed contest regardless of whether such contest is prearranged or organized.

    b.  Participating in a performance driver or racing training program or vehicle performance testing of any kind to include, but not limited to, training or testing within a facility designed for racing whether or not competition is involved.

C.  "We" do not provide Liability Coverage for loss to any "nonowned auto" due to destruction or confiscation by governmental or civil authorities because "you" or any "family member":

1.  Engaged in illegal activities; or

2.  Failed to comply with Environmental Protection Agency or Department of Transportation standards.

## LIMIT OF INSURANCE

### A1. SPLIT LIMIT

If **A1.** Split limits of insurance are shown in the Declarations, the following applies:

The limit of insurance shown in the Declarations for each person for Bodily Injury Liability is "our" maximum limit of insurance for all damages due to or arising out of "bodily injury" sustained by any one person in any one auto accident. Subject to this limit for each person the limit of insurance shown in the Declarations for each accident for Bodily Injury Liability is "our" maximum limit of insurance for all damages due to or arising out of "bodily injury" resulting from any one auto accident. The limit of insurance shown in the Declarations for each accident for Property Damage Liability is "our" maximum limit of insurance for all damages to all property resulting from any one auto accident. This is the most "we" will pay regardless of the number of:

1.  "Covered persons";

2.  Claims made;

3.  Vehicles or premiums shown in the Declarations; or

4.  Vehicles involved in the auto accident.

No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and Part B or any uninsured or underinsured motorists coverage provided by endorsement to this policy.

### A2. SINGLE LIMIT

If **A2.** Single limits of insurance are shown in the Declarations, the following applies:

The limit of insurance shown in the Declarations for this coverage is "our" maximum limit of insurance for all damages resulting from any one auto accident. This is the most "we" will pay regardless of the number of:

1.  "Covered persons";

2.  Claims made;

3.  Vehicles or premiums shown in the Schedule or in the Declarations; or

4.  Vehicles involved in the auto accident.

"We" will apply the limit of insurance to provide any separate limits required by law for bodily injury and property damage liability. However, this provision will not change "our" total limit of insurance.

No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and Part B or any uninsured or underinsured motorists coverage provided by endorsement to this policy.

## OUT OF STATE COVERAGE

If an auto accident to which this policy applies occurs in any state or province other than the one in which "your covered auto" is principally garaged, "we" will interpret "your" policy for that accident as follows:

If the state or province has:

1. A financial responsibility or similar law specifying limits of insurance for "bodily injury" or "property damage" higher than the limit shown in the Declarations, "your" policy will provide the higher specified limit.

2. A compulsory insurance or similar law requiring a nonresident to maintain insurance whenever the nonresident uses a vehicle in that state or province, "your" policy will provide at least the required minimum amounts and types of coverage.

No one will be entitled to duplicate payments for the same elements of loss.

## FINANCIAL RESPONSIBILITY REQUIRED

When this policy is certified as future proof of financial responsibility, this policy shall comply with the law to the extent required.

## OTHER INSURANCE

If there is other applicable liability insurance "we" will pay only "our" share of the loss. "Our" share is the proportion that "our" limit of insurance bears to the total of all applicable limits. However, any insurance "we" provide for a vehicle "you" do not own, including any vehicle while used as a temporary substitute for "your covered auto", or a vehicle operated or used by any person other than "you" or any "family member" shall be excess over any other collectible insurance.

# PART B - MEDICAL PAYMENTS COVERAGE

## INSURING AGREEMENT

"We" will pay reasonable expenses incurred for necessary medical (including surgical, x-ray and dental services; prosthetic devices, eyeglasses and pharmaceuticals; and, necessary ambulance, hospital and professional nursing services) and funeral services because of "bodily injury":

1. Caused by accident; and

2. Sustained by a "covered person".

"We" will pay only those expenses incurred for services rendered within 3 years from the date of the accident.

"Covered person" as used in this Part means:

1. "You" or any "family member":

    a. While "occupying"; or

    b. As a pedestrian when struck by;

    a motor vehicle designed for use mainly on public roads or a "trailer" of any type.

2. Any other person while "occupying" "your covered auto".

## EXCLUSIONS

"We" do not provide Medical Payments Coverage for any person for "bodily injury":

1. Sustained while "occupying" any motorized vehicle having fewer than four wheels.

Includes copyrighted material of Insurance
Services Office, Inc., with its permission.

2. Sustained while "occupying" "your covered auto" when it is being used as a public or livery conveyance. This Exclusion (2.) does not apply to a share-the-expense car pool.

3. Sustained while "occupying" any vehicle located for use as a residence or premises.

4. Occurring during the course of employment if workers' compensation benefits are required or available for the "bodily injury".

5. Sustained while "occupying" or, when struck by, any vehicle (other than "your covered auto") which is:

   a. Owned by "you"; or

   b. Furnished or available for "your" regular use.

6. Sustained while "occupying" or, when struck by, any vehicle (other than "your covered auto") which is:

   a. Owned by any "family member"; or

   b. Furnished or available for the regular use of any "family member".

However, this Exclusion (6.) does not apply to "you".

7. Sustained while "occupying" a vehicle without a reasonable belief that person is entitled to do so.

8. Sustained while "occupying" a vehicle when it is being used in the "business" of a "covered person". This Exclusion (8.) does not apply to "bodily injury" sustained while "occupying" a:

   a. Private passenger auto;

   b. Pickup or van; or

   c. "Trailer" used with a vehicle described in a. or b. above.

9. Caused by or as a consequence of:

   a. Discharge of a nuclear weapon (even if accidental);

   b. War (declared or undeclared);

   c. Civil war;

   d. Insurrection; or

   e. Rebellion or revolution.

10. From or as a consequence of the following, whether controlled or uncontrolled or however caused:

    a. Nuclear reaction;

    b. Radiation; or

    c. Radioactive contamination.

11. Sustained operating any motorized vehicle while:

    a. Operated in, or in practice or preparation for, any demolition, racing or speed contest regardless of whether such contest is prearranged or organized.

    b. Participating in a performance driver or racing training program or vehicle performance testing of any kind to include, but not limited to, training or testing within a facility designed for racing whether or not competition is involved.

## LIMIT OF INSURANCE

The limit of insurance shown in the Declarations for this coverage is "our" maximum limit of insurance for each person injured in any one accident. This is the most "we" will pay regardless of the number of:

1. "Covered persons";

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the accident.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and Part A or any uninsured or underinsured motorists coverage provided by endorsement to this policy.

No payment will be made unless the injured person or that person's legal representative agrees in writing that any payment shall be applied toward any settlement or judgment that person receives under Part A or uninsured or underinsured motorists coverage provided by endorsement to this policy.

## OTHER INSURANCE

### COVERAGE B1. REGULAR (FULL) MEDICAL PAYMENTS

If there is other applicable auto medical payments insurance, "we" will pay only "our" share of the loss. "Our" share is the proportion "our" limit of insurance bears to the total of all applicable limits. However, any insurance "we" provide with respect to a vehicle "you" do not own, including any vehicle while used as a temporary substitute for "your covered auto", or a vehicle operated or used by any person other than "you" or any "family member" shall be excess over any other collectible auto insurance providing payments for medical or funeral expenses.

### COVERAGE B2. MODIFIED (LIMITED) OR EXCESS MEDICAL PAYMENTS

If there is other applicable insurance for medical or funeral services (including but not limited to other auto Medical Payments insurance; Homeowners Liability insurance for medical exposures; individual, blanket or group accident, disability or hospitalization insurance; medical or surgical reimbursement plan; or Workers' Compensation or disability benefits law), this insurance does not apply except as excess over that other insurance.

# PART C - UNINSURED MOTORISTS COVERAGE

If purchased, refer to respective state uninsured motorist coverage endorsement.

# PART D - COVERAGE FOR DAMAGE TO YOUR AUTO

## INSURING AGREEMENT

"We" will pay for direct and accidental loss to "your covered auto", including its equipment, minus any applicable deductible shown in the Declarations. "We" will pay for loss to "your covered auto" caused by:

1.  Other than "collision" only if the Declarations indicate Other Than Collision Coverage is provided for that auto.

2.  "Collision" only if the Declarations indicate Collision Coverage is provided for that auto.

If there is a loss to a "nonowned auto" not otherwise covered under Part A - Liability Coverage, Insuring Agreement C., above, "we" will provide the broadest coverage applicable to any "your covered autos" shown in the Declarations. However, this coverage does not apply to any vehicle weighing in excess of 26,000 pounds.

"Collision", as used throughout this policy, means the upset, or collision of "your covered auto" with another object. However, loss caused by the following are not considered "collision":

1.  Missiles or falling objects;

2.  Fire;

3.  Theft or larceny;

4.  Explosion or earthquake;

5.  Windstorm;

6.  Hail, water or flood;  .

7.  Malicious mischief or vandalism;

8.  Riot or civil commotion;

9.  Contact with bird or animal; or

10. Breakage of glass.

FA4000T (4/08)              Includes copyrighted material of Insurance              **Page 8 of 15**
                           Services Office, Inc., with its permission.

If breakage of glass is caused by a "collision", "you" may elect to have it considered a loss caused by "collision".

With respect to vehicles for which it is shown in the Declarations that Collision Coverage is provided in excess of a deductible amount stated in the Declarations, this deductible amount shall not apply:

1. To loss caused by "collision" with another auto insured by "us" including an auto owned by "you"; or

2. Providing all of the following conditions exists:

   a. Loss to "your covered auto" is greater than the deductible amount; and

   b. The owner or operator of the other auto has been identified; and

   c. The owner or operator of the other auto is legally liable for the loss to "your covered auto"; and

   d. A valid property damage liability insurance policy is in force at the time of the accident with respect to the person or organization legally responsible for the loss to "your covered auto".

Loss to awnings or cabanas is covered subject to a $50 deductible or the deductible shown in the declarations, whichever is greater.

## TRANSPORTATION EXPENSES

A. In addition, "we" will pay, without application of a deductible, up to $20 per day, to a maximum of $600, for:

   1. Temporary transportation expenses incurred by "you" in the event of a loss to "your covered auto". "We" will pay for such expenses if the loss is caused by:

      a. Other than "collision" only if the Declarations indicate Other Than Collision Coverage is provided for that auto.

      b. "Collision" only if the Declarations indicate Collision Coverage is provided for that auto.

   2. Loss of use expenses for which "you" become legally responsible in the event of loss to a "nonowned auto". "We" will pay for the loss of use expenses if the loss is caused by:

      a. Other than "collision" only if the Declarations indicate Other Than Collision Coverage is provided for any "your covered auto".

      b. "Collision" only if the Declarations indicate Collision Coverage is provided for any "your covered auto".

B. Subject to the provisions of Paragraph A., if the loss is caused by:

   1. A total theft of "your covered auto" or a "nonowned auto", "we" will pay only expenses incurred during the period ending when "your covered auto" or the "nonowned auto" is returned to use or "we" pay for its loss.

   2. Other than theft of "your covered auto" or a "nonowned auto", "we" will pay only expenses beginning when the auto is withdrawn from use for more than 24 hours.

C. "Our" payment will be limited to that period of time reasonably required to repair or replace the "your covered auto" or the "nonowned auto".

## TOWING AND LABOR COSTS COVERAGE

"We" will pay towing and labor costs incurred each time "your covered auto" or any "nonowned auto" is disabled, up to the amount shown in the Declarations as applicable to that vehicle. If a "nonowned auto" is disabled, "we" will provide the broadest towing and labor costs coverage applicable to any "your covered auto" shown in the Declarations. "We" will pay only for labor performed at the place of disablement.

## EXCLUSIONS

"We" will not pay for:

1. Loss to "your covered auto" or any "nonowned auto" which occurs while it is being used as a public or livery conveyance. This Exclusion (1.) does not apply to a share-the-expense car pool.

Includes copyrighted material of Insurance
Services Office, Inc., with its permission.

2. Damage due and confined to:

   a. Wear and tear;

   b. Freezing;

   c. Mechanical or electrical breakdown or failure (other than burning of wiring); or

   d. Road damage to tires.

This Exclusion (2.) does not apply if the damage results from the total theft of "your covered auto".

3. Loss due to or as a consequence of:

   a. Radioactive contamination;

   b. Discharge of any nuclear weapon (even if accidental);

   c. War (declared or undeclared);

   d. Civil war;

   e. Insurrection; or

   f. Rebellion or revolution.

4. Loss by theft to:

   a. Scanning monitor receivers; or

   b. Personal computers.

   Coverage for loss by theft is limited to $500 for all other items of electronic equipment not permanently installed in "your covered auto". Coverage applies only to items specifically designed for use in an automobile. This coverage is excess over any other valid and collectible insurance.

5. Loss to devices for the detection of police speed monitoring instruments.

6. Loss to tapes, records, discs or other media for use with equipment designed for the reproduction of sound and / or video.

7. Loss to a camper body or "trailer" not shown in the Declarations. This Exclusion (7.) does not apply to a camper body or "trailer" "you":

   a. Acquire during the policy period; and

   b. Ask "us" to insure within 30 days after "you" become the owner.

8. Loss to any exterior custom furnishings or equipment, except a nonpermanently attached cap, cover or bedliner in or upon any pickup or van. Exterior custom furnishings or equipment include but are not limited to custom murals, paintings, or other decals or graphics.

9. Loss to any interior custom furnishings or equipment with an accumulated value in excess of $500 in or upon any pick-up or van. Interior custom furnishings or equipment include but are not limited to:

   a. Special carpeting and insulation, furniture, bars or television receivers;

   b. Facilities for cooking and sleeping;

   c. Height-extending roofs.

10. Loss to "your covered auto" due to destruction or confiscation by governmental or civil authorities because "you" or any "family member":

   a. Engaged in illegal activities; or

   b. Failed to comply with Environmental Protection Agency or Department of Transportation standards.

This Exclusion (10.) does not apply to the interests of Loss Payees in "your covered auto".

11. Loss to any motorized vehicle while:

   a. Operated in, or in practice or preparation for, any demolition, racing or speed contest regardless of whether such contest is prearranged or organized.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

b. Participating in a performance driver or racing training program or vehicle performance testing of any kind to include, but not limited to, training or testing within a facility designed for racing whether or not competition is involved.

## LIMIT OF INSURANCE

"Our" limit of insurance for loss will be the lesser of the:

1. Actual cash value of the stolen or damaged property;

2. Amount necessary to repair or replace the property; or

3. Stated amount shown in the Declarations.

If a repair or replacement results in better than like kind or quality, "we" will not pay for the amount of the betterment.

"Our" payment for loss will be reduced by any applicable deductible shown in the Declarations.

## PAYMENT OF LOSS

"We" may pay for loss in money or repair or replace the damaged or stolen property. "We" may, at "our" expense, return any stolen property to:

1. "You"; or

2. The address shown in this policy.

If "we" return stolen property "we" will pay for any damage resulting from the theft. "We" may keep all or part of the property at an agreed or appraised value.

If "we" pay for loss in money, "our" payment will include the applicable sales tax for the damaged or stolen property.

## NO BENEFIT TO BAILEE

This insurance shall not directly or indirectly benefit any carrier or other bailee for hire.

## OTHER INSURANCE

If other sources of recovery also cover the loss "we" will pay only "our" share of the loss. "Our" share is the proportion "our" limit of insurance bears to the total of all applicable limits. However, any insurance "we" provide with respect to a "nonowned auto" shall be excess over any other collectible source of recovery.

## APPRAISAL

If "we" and "you" do not agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. The appraisers will state separately the actual cash value and the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

1. Pay its chosen appraiser; and

2. Bear the expenses of the appraisal and umpire equally.

"We" do not waive any of "our" rights under this policy by agreeing to an appraisal.

## LOSS PAYABLE

Loss or damage under this policy shall be paid, as interest may appear, to "you" and the loss payee shown in the Declarations. This insurance, with respect to the interest of the loss payee, shall not become invalid because of "your" fraudulent acts or omissions unless the loss results from "your" conversion, secretion, or embezzlement of "your" covered auto". However, "we" reserve the right to cancel the policy as permitted by policy terms and the cancellation shall terminate this agreement as to the loss payee's interest. "We" will give the same advance notice of cancellation to the loss payee as "we" give to the named insured shown in the Declarations.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

When "we" pay the loss payee "we" shall, to the extent of payment, be subrogated to the loss payee's rights of recovery.

## PART E - DUTIES AFTER AN ACCIDENT OR LOSS

### GENERAL DUTIES

"We" have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

"We" must be notified promptly of how, when and where the accident or loss happened. Notice should also include the names and addresses of any injured persons and of any witnesses.

A person seeking any coverage must:

1. Cooperate with "us" in the investigation, settlement or defense of any claim or suit.

2. Promptly send "us" copies of any notices or legal papers received in connection with the accident or loss.

3. Submit, as often as "we" reasonably require:

    a. To physical exams by physicians "we" select. "We" will pay for these exams.

    b. To examination under oath and subscribe the same.

4. Authorize "us" to obtain:

    a. Medical reports; and

    b. Other pertinent records.

5. Submit a proof of loss when required by "us".

### ADDITIONAL DUTIES FOR COVERAGE FOR DAMAGE TO YOUR AUTO

A person seeking Coverage for Damage to Your Auto must also:

1. Take reasonable steps after loss to protect "your covered auto" and its equipment from further loss. "We" will pay reasonable expenses incurred to do this.

2. Promptly notify the police if "your covered auto" is stolen.

3. Permit "us" to inspect and appraise the damaged property before its repair or disposal.

## PART F - GENERAL PROVISIONS

### BANKRUPTCY

Bankruptcy or insolvency of the "covered person" shall not relieve "us" of any obligations under this policy.

### CHANGES

A. This policy contains all the agreements between "you" and "us". Its terms may not be changed or waived except by endorsement issued by "us". If a change requires a premium adjustment, "we" will adjust the premium as of the effective date of change.

B. If there is a change to the information used to develop the policy premium, "we" may adjust "your" premium. Changes during the policy term that may result in a premium increase or decrease include, but are not limited to, changes in:

    1. The number, type or use classification of insured vehicles;

    2. Operators using insured vehicles, newly licensed drivers in the household, any drivers added to "your" household;

    3. The place of principal garaging of insured vehicles;

    4. Coverage, deductible or limits.

If a change resulting from A. or B. requires a premium adjustment, "we" will make the premium adjustment in accordance with "our" manual rules.

**C.** If, within 45 days prior to the beginning of this policy or during the policy period, "we" make any changes to any forms or endorsements of this policy for which there is currently no separate premium charge, and that change provides more coverage than this policy, the change will be considered as included until the end of the current policy period. "We" will make no additional premium charge for this additional coverage during the interim.

## LEGAL ACTION AGAINST US

No legal action may be brought against "us" until there has been full compliance with all the terms of this policy. In addition, under Part A, no legal action may be brought against "us" until:

1. "We" agree in writing that the "covered person" has an obligation to pay; or

2. The amount of that obligation has been finally determined by judgment after trial.

No person or organization has any right under this policy to bring "us" into any action to determine the liability of a "covered person".

## OUR RIGHT TO RECOVER PAYMENT

**A.** If "we" make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another, "we" shall be subrogated to that right.

That person shall do:

1. Whatever is necessary to enable "us" to exercise "our" rights; and

2. Nothing after loss to prejudice them.

However, "our" rights in this Paragraph (A.) do not apply under Part D, against any person using "your covered auto" with a reasonable belief that person is entitled to do so.

**B.** If "we" make a payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall:

1. Hold in trust for "us" the proceeds of the recovery; and

2. Reimburse "us" to the extent of "our" payment.

## POLICY PERIOD AND TERRITORY

This policy applies only to accidents and losses which occur:

1. During the policy period as shown in the Declarations; and

2. Within the policy territory.

The policy territory is:

1. The United States of America, its territories or possessions;

2. Puerto Rico; or

3. Canada.

This policy also applies to loss to, or accidents involving, "your covered auto" while being transported between their ports.

## TERMINATION

## CANCELLATION

This policy may be cancelled during the policy period as follows:

1. The named insured shown in the Declarations may cancel by:

    a. Returning this policy to "us"; or

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

b. Giving "us" advance written notice of the date cancellation is to take effect.

2. "We" may cancel by mailing to the named insured shown in the Declarations at the address shown in this policy:

   a. At least 10 days notice:

      (1) If cancellation is for nonpayment of premium; or

      (2) If notice is mailed during the first 60 days this policy is in effect and this is not a renewal or continuation policy; or

   b. At least 20 days notice in all other cases.

3. After this policy is in effect for 60 days, or if this is a renewal or continuation policy, "we" will cancel only:

   a. For nonpayment of premium; or

   b. If "your" driver's license or that of:

      (1) Any driver who lives with "you"; or

      (2) Any driver who customarily uses "your covered auto";

   has been suspended or revoked. This must have occurred:

      (1) During the policy period; or

      (2) Since the last anniversary of the original effective date if the policy period is other than 1 year.

   c. If the policy was obtained through material misrepresentation.

## NONRENEWAL

If "we" decide not to renew or continue this policy, "we" will mail notice to the named insured shown in the Declarations at the address shown in this policy. Notice will be mailed at least 30 days before the end of the policy period. If the policy period is other than 1 year, "we" will have the right not to renew or continue the policy at the end of the current policy term.

## AUTOMATIC TERMINATION

If "we" offer to renew or continue and "you" or "your" representative do not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that "you" have not accepted "our" offer.

If "you" obtain other insurance on "your covered auto", any similar insurance provided by this policy will terminate as to that auto on the effective date of the other insurance.

## OTHER TERMINATION PROVISIONS

1. If the law in effect in "your" state at the time this policy is issued, renewed or continued:

   a. Requires a longer notice period;

   b. Requires a special form of or procedure for giving notice; or

   c. Modifies any of the stated termination reasons;

   "we" will comply with those requirements.

2. "We" may deliver any notice instead of mailing it. Proof of mailing of any notice shall be sufficient proof of notice.

3. If this policy is cancelled, "you" may be entitled to a premium refund. If so, "we" will send "you" the refund. The premium refund, if any, will be computed according to "our" manuals. However, making or offering to make the refund is not a condition of cancellation.

4. The effective date of cancellation stated in the notice shall become the end of the policy period.

## TRANSFER OF YOUR INTEREST IN THIS POLICY

"Your" rights and duties under this policy may not be assigned without "our" written consent. However, if a named insured shown in the Declarations dies, coverage will be provided for:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

1. The surviving spouse if resident in the same household at the time of death. Coverage applies to the spouse as if a named insured shown in the Declarations; and

2. The legal representative of the deceased person as if a named insured shown in the Declarations. This applies only with respect to the representative's legal responsibility to maintain or use "your covered auto".

Coverage will only be provided until the end of the policy period.

### TWO OR MORE AUTO POLICIES

If this policy and any other auto insurance policy issued to "you" by "us" apply to the same accident, the maximum limit of insurance under all the policies shall not exceed the highest applicable limit of insurance under any one policy.

### FRAUD

"We" do not provide coverage for any "covered person" who has made fraudulent statements or engaged in fraudulent conduct in connection with any accident or loss for which coverage is sought under this policy.

### CHOICE OF LAW

It is understood and agreed this policy and all of its terms shall be construed and interpreted in conformity with the laws of the state in which it is issued.

### INSURED'S REPRESENTATIVE CLAUSE

By acceptance of this policy "you" and any other "covered person" agree the first Named Insured listed in the Declarations will act on both "your" and their behalf with respect to:

1. The acceptance of endorsements or other policy modifications; and

2. The giving or receiving of any other notice provided for in this policy.

Further, by acceptance of this policy, "you" and any other "covered person" agree to accept and be bound by any actions taken by the first Named Insured with regard to 1. and 2., above.

All other terms and conditions of this policy remain unchanged.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# UNINSURED MOTORISTS COVERAGE
# FOR BODILY INJURY AND PROPERTY DAMAGE
# SPLIT LIMITS
# OHIO

With respect to premium(s) shown in the Declarations, the following coverage is hereby added:

I.  **Part C - Uninsured Motorists Coverage**

**INSURING AGREEMENT**

A.  "We" will pay compensatory damages which a "covered person" is legally entitled to recover from the owner or operator of:

1.  An "uninsured motor vehicle" as defined in SECTIONS 1., 2. and 4. of the definition of an "uninsured motor vehicle" because of "bodily injury":

    a.  Sustained by a "covered person"; and

    b.  Caused by an accident.

2.  An "uninsured motor vehicle" as defined in SECTION 3. of the definition of an "uninsured motor vehicle" because of "bodily injury" sustained by a "covered person".

3.  An "uninsured motor vehicle" as defined in SECTIONS 1., 2. and 4. of the definition of an "uninsured motor vehicle" because of "property damage" caused by an accident if the Declarations indicates that both "bodily injury" and "property damage" Uninsured Motorists Coverage applies.

The owner's or operator's liability for these damages must result from the ownership, maintenance, or use of the "uninsured motor vehicle". The "covered person" shall be required to prove all elements of the "covered person's" claim that are necessary to recover from the owner or operator of the "uninsured motor vehicle".

"We" will pay under this coverage for "bodily injury" caused by an accident only if **1.** or **2.** below applies:

1.  The limits of insurance under all applicable "bodily injury" liability bonds or policies have been exhausted by payment of judgments or settlements; or

2.  A tentative settlement has been made between a "covered person" and a person(s) or organization(s) who may be legally responsible for the accident, or the insurer or legal representative of such person(s) or organization(s) and "we":

    a.  Have been given prompt written notice of such settlement; and

    b.  Advance payment to the "covered person" in an amount equal to the tentative settlement within 30 days after receipt of notification.

"We" will pay under this coverage for "property damage" caused by an accident only after any "property damage" liability bonds or policies have been exhausted by payment of judgments or settlements.

Any judgment for damages arising out of a suit brought without "our" written consent to both the suit and the judgment is not binding on "us".

B.  "Covered person" as used in this endorsement means:

1.  "You" or any "family member".

2.  Any other person "occupying" "your covered auto".

3.  Any person for damages that person is entitled to recover because of "bodily injury" to which this coverage applies sustained by a person described in **1.** or **2.** above.

C.  "Motor vehicle" as used in this endorsement means:

Includes copyrighted material of Insurance
Services Office, Inc., with its permission.

1. A self-propelled vehicle designed for use and principally used on public roads, including an automobile, truck and motorcycle.

2. A motor home, provided the motor home is not stationary and is not being used as a temporary or permanent residence or office.

3. "Motor vehicle" does not include a trolley, streetcar, "trailer", railroad engine, railroad car, motorized bicycle, golf cart, off-road recreational vehicle, snowmobile, fork lift, aircraft, watercraft, construction equipment, farm tractor or other vehicle designed and principally used for agricultural purposes, mobile home, vehicle traveling on treads or rails or any similar vehicle.

D. "Property damage" as used in this endorsement means:

1. Injury to or destruction of "your covered auto".

2. Injury to or destruction of any property owned by a person listed in SECTIONS 1. and 2. of "covered person" while contained in "your covered auto".

3. Loss of use of damaged or destroyed property.

"We" will pay up to $15 per day, to a maximum of $450, for such loss of use.

E. "Uninsured motor vehicle" means a land "motor vehicle" or "trailer":

1. For which no liability bond or policy applies at the time of an accident.

2. Which is an "underinsured motor vehicle". An "underinsured motor vehicle" means a "motor vehicle" for which the sum of the limits of coverage available for payment to the "covered person" under all liability bonds or policies covering persons or organizations liable to the "covered person" at the time of the accident provide less than the Limit of Liability available for payment to the "covered person" under this coverage.

3. That is a hit-and-run vehicle and neither the operator nor owner can be identified. The vehicle must either:

   a. Hit "you" or any "family member", "your covered auto" or a vehicle "you" or any "family member" is "occupying"; or

   b. Cause "bodily injury" or "property damage" to "you" or any "family member" without hitting "you" or any "family member", "your covered auto" or a vehicle "you" or any "family member" is "occupying".

   The facts of the accident or intentional act must be proved by independent corroborative evidence other than the testimony of the "covered person" making a claim under this or similar coverage, unless such testimony is supported by additional evidence.

4. To which a liability bond or policy applies at the time of the accident but the bonding or insuring company:

   a. Denies coverage; or

   b. Is or becomes insolvent.

However, "uninsured motor vehicle" does not include any "motor vehicle" or equipment:

1. Owned or operated by a self-insurer under any applicable "motor vehicle" law, except a self-insurer which is or becomes insolvent and cannot provide the amounts required by that motor vehicle law.

2. Owned by any governmental unit or agency, unless the owner or operator of the "uninsured motor vehicle" has:

   a. An immunity under the Ohio Political Subdivision Tort Liability Law and / or diplomatic immunity, and

   b. The "insured" would be legally entitled to recover from the owner or operator but for the immunity described above.

3. Designed for use mainly off public roads while not on public roads.

4. While located for use as a residence or premises.

CPA1023OH (10/11)

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

5. For which liability coverage is afforded under this policy.

6. Owned by or furnished or available for "your" regular use or that of any "family member" or any other "covered person".

## EXCLUSIONS

**A.** "We" do not provide Uninsured Motorists Coverage for "bodily injury" or "property damage" sustained by any person:

1. While that person is operating or "occupying" a "motor vehicle" owned by a "covered person", a spouse or a resident relative of a "covered person", if the "motor vehicle" is not specifically identified in this policy, or is not a newly acquired or replacement "motor vehicle" covered under this endorsement. This includes a "trailer" of any type used with that "motor vehicle".

2. If that person settles the "bodily injury" or "property damage" claim with the person(s) or organization(s) legally responsible for the accident or the insurer or legal representative of such person(s) or organization(s) without "our" consent.

3. While operating or "occupying" a "motor vehicle" without a reasonable belief that he or she is entitled to do so, provided that under no circumstances will a person whose license has been suspended, revoked, or never issued be held to have a reasonable belief that he or she is entitled to operate a "motor vehicle".

4. For the first $250 of the amount of "property damage" to the property of a "covered person" as the result of any one accident. This exclusion does not apply if:

   a. "Your covered auto" is legally parked and unoccupied when involved in an accident with an "uninsured motor vehicle";

   b. The Declarations of this policy indicates "Collision" coverage is provided for "your covered auto" and the damage to "your covered auto" exceeds $200; or

   c. "You" elect to have this loss paid under "Collision" coverage due to inadequate limits of liability for "property damage" caused by an "uninsured motor vehicle" and the damage to "your covered auto" exceeds $200, in which case, any "Collision" deductible applicable to the damage to "your covered auto" will be waived.

5. If the property is contained in or struck by a "motor vehicle" (other than "your covered auto") owned by "you" or any "family member".

**B.** Uninsured Motorists Coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar law:

1. Disability benefits law;

2. Personal injury protection benefits; or

3. Pension statutes.

**C.** "We" do not provide Uninsured Motorists Coverage for punitive or exemplary damages.

## LIMIT OF LIABILITY

The limit of bodily injury liability shown in the Schedule or the Declarations for each person for Uninsured Motorists Coverage is "our" maximum limit of liability for all damages, including damages claimed by any person or organization for care, loss of services, or death due to and arising out of "bodily injury" sustained by any one person in any one accident.

Subject to this limit for each person, the limit of "bodily injury" liability shown in the Declarations for each accident for Uninsured Motorists Coverage is "our" maximum limit of liability for all damages due to and arising out of "bodily injury" resulting from any one accident.

The limit of "property damage" liability shown in the Schedule or the Declarations for each accident for Uninsured Motorists Coverage is "our" maximum limit of liability for all damages due to or arising out of "property damage" resulting from any one accident and will be the lesser of:

1. The limit of liability shown in the Declarations; or

2. The actual cash value of "your covered auto".

An adjustment for depreciation and physical condition will be made in determining actual cash value at the time of loss.

This is the most "we" will pay regardless of the number of:

1. Policies;

2. "Covered persons";

3. Vehicles or premiums shown in the Declarations;

4. Vehicles involved in the accident; or

5. Claims made.

No one will be entitled to receive duplicate payments for the same elements of loss under Uninsured Motorists Coverage and Part A or Part B of this policy.

"We" will not make a duplicate payment under this endorsement for any element of loss for which payment has been made by or for anyone who is legally liable.

"We" will not pay for any element of loss if a person is entitled to receive payment for the same element of loss under any personal injury protection benefits, disability benefits, pension statutes or similar laws, including medical payments made under any statute.

The limit of liability provided in this endorsement shall be reduced by all sums available for payment to the "covered person" for "bodily injury" under all liability bonds or policies covering person(s) or organization(s) legally liable for the accident.

Any payment "we" make under this coverage will reduce any amount that person is entitled to recover for the same damages under Part A of the policy.

**OTHER INSURANCE**

If there is other applicable similar insurance, "we" will pay only "our" share of the loss. "Our" share is the proportion that "our" limit of insurance bears to the total of all applicable limits.

The maximum recovery under all the policies combined may equal but not exceed the highest applicable limit for any one vehicle under any policy providing coverage on either a primary or excess basis. However, any insurance "we" provide with respect to vehicle "you" do not own including any vehicle while used as a temporary substitute for "your covered auto" shall be excess over all other collectible uninsured motorists insurance. "We" will pay only the amount by which the limit of insurance for this coverage exceeds the limits of such other insurance.

If there is other applicable insurance, "we" will pay only "our" share of the loss. If the coverage under this endorsement is provided:

1. On a primary basis, "we" will pay only "our" share of the loss that must be paid under insurance providing coverage on a primary basis. "Our" share is the proportion that "our" limit of insurance bears to the total of all applicable limits of liability for coverage on a primary basis.

2. On an excess basis, "we" will pay only "our" share of the loss that must be paid under insurance providing coverage on an excess basis. "Our" share is the proportion that "our" limit of liability bears to the total of all applicable limits of insurance for coverage on an excess basis.

**ARBITRATION**

If "we" and a "covered person" do not agree:

1. Whether that person is legally entitled to recover damages from a party responsible for the accident; or

2. As to the amount of damages that may be recovered;

the matter may be settled by arbitration. However, disputes concerning coverage under this endorsement may not be arbitrated.

The "covered person" and "we", must mutually agree to arbitrate the disagreements. If the "covered person" and "we" do not agree to arbitrate, then the disagreement will be resolved in a court having competent jurisdiction.

If arbitration is used, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days as to the third arbitrator, either may request that selection be made by a judge of a court having jurisdiction. Each party will:

1. Pay the expenses it incurs; and

2. Bear the expenses of the third arbitrator equally.

Unless both parties agree otherwise, arbitration will take place in the county in which the "covered person" lives. Local rules of law as to procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding as to:

1. Whether the "covered person" is legally entitled to recover damages from a party responsible for the accident; and

2. The amount of damages.

## DUTIES AFTER AN ACCIDENT OR LOSS

For purposes of coverage provided under this endorsement only, Part E. **Duties After an Accident or Loss**, is deleted in its entirety and replaced with the following:

"We" have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

1. A person seeking coverage under this policy must:

   a. Notify "us" promptly of how, when and where the accident or loss happened. Notice should also include the names and addresses of any injured persons and of any witnesses;

   b. Promptly notify the police if a hit-and-run driver is involved;

   c. Promptly send "us" copies of legal papers if a suit is brought;

   d. Promptly notify "us" in writing of a tentative settlement between a "covered person" and a person(s) or organization(s) who may be legally responsible for the accident, or the insurer or legal representative of such person(s) or organization(s) and allow "us" 30 days to advance payment to that "covered person" in an amount equal to the tentative settlement, to preserve "our" rights against the person(s) or organization(s) who may be legally responsible for the accident, or the insurer or legal representative of such person(s) or organization(s);

   e. Cooperate with "us" in the investigation, settlement or defense of any claim or suit. Cooperation includes, but is not limited to, identifying all parties who may be responsible for the accident and all insurers who may be obligated to provide coverage;

   f. Submit, as often as "we" reasonably require:

      1. To physical exams by physicians "we" select. "We" will pay for these exams.

      2. To examinations under oath, including attesting to a written transcript of the examination;

   g. Authorize "us" to obtain:

      1. Medical Reports; and

      2. Other records pertinent to the loss.

   h. Submit a proof of loss when required by "us".

2. Additionally, a person seeking coverage for damage to "your" auto must also:

   a. Take reasonable steps after loss to protect "your covered auto" and its equipment from further loss. "We" will pay reasonable expenses incurred to do this.

   b. Permit "us" to inspect and appraise the damaged property before its repair or disposal.

II. Part F **General Provisions**, is amended as follows:

   A. For purposes of coverage provided under this endorsement only, the section titled **Legal Action Against Us** is deleted in its entirety and replaced with the following:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

## LEGAL ACTION AGAINST US

No lawsuit or action whatsoever or any proceeding in arbitration shall be brought against "us" for the recovery of any claim under the provisions of Uninsured Motorists Coverage of this policy unless the "covered person" has satisfied all of the things that "covered person" is required to do under the terms and conditions of this endorsement.

Any claim for Uninsured Motorist Coverage must be brought within three (3) years of the date of the accident causing the "bodily injury" or one (1) year after the date the liability insurer of the "uninsured motor vehicle" becomes insolvent, whichever is later. "Our" subrogation rights also must not be prejudiced.

**B.** The section titled **Our Right to Recover Payment** is deleted in its entirety and replaced with the following:

### OUR RIGHT TO RECOVER PAYMENT

**a.** If "we" make a payment and the "covered person" recovers from another party, the "covered person" shall :

  **1.** Hold the proceeds in trust for "us"; and

  **2.** Pay "us" back the amount "we" have paid.

The person to or for whom payment was made shall do:

  **1.** Whatever is necessary to enable "us" to exercise "our" rights; and

  **2.** Nothing after loss to prejudice them.

However, "our" right to recover payment shall not apply if "we":

  **1.** Have been given prompt written notice of a tentative settlement between a "covered person" and a person(s) or organization(s) who may be legally responsible for the accident, or the insurer or legal representative of such person(s) or organization(s); and

  **2.** Fail to advance payment to the "covered person" in an amount equal to the tentative settlement within 30 days after receipt of the notification.

If "we" advance payment to the "covered person" in an amount equal to the tentative settlement within 30 days after receipt of the notification:

  **1.** That payment will be separate from any amount the "covered person" is entitled to recover under the provisions of this Uninsured Motorist Coverage; and

  **2.** "We" also have a right to recover the advanced payment.

**b.** If "we" make a payment under this policy and the person to or for whom payment is made recovers from another, that person shall:

  **1.** Hold in trust for "us" the proceeds of the recovery; and

  **2.** Reimburse "us" to the extent of "our" payment.

All other provisions of the policy apply.

# AMENDMENT OF POLICY PROVISIONS - OHIO

I. **Definitions**

The following is added to the Definitions Section:

Throughout the policy "minimum limits" refers to the following limits of insurance as required by the Ohio Financial Responsibility Law, to be provided under a policy of automobile liability insurance:

1. $12,000 for each person, subject to $25,000 for each accident, with respect to "bodily injury", and

2. $7,500 for each accident with respect to "property damage".

I. **PART A - LIABILITY COVERAGE**

Exclusion A.10. is replaced by the following:

**A.10.** For "bodily injury" to "you" or any "family member", to the extent the limits of insurance for this coverage exceed the minimum limits of insurance required by the Ohio Financial Responsibility Law.

II. **PART F - GENERAL PROVISIONS**

Part F is amended as follows:

A. The **Termination** provision is replaced by the following:

**TERMINATION**

**CANCELLATION**

This policy may be cancelled during the policy period as follows:

1. The named insured shown in the Declarations may cancel by:

    a. Returning this policy to "us"; or

    b. Giving "us" advance written notice of the date cancellation is to take effect.

2. "We" may cancel by mailing to the named insured shown in the Declarations at the address shown in this policy:

    a. At least 10 days notice if cancellation is for nonpayment of premium; or

    b. At least 30 days notice:

        (1) If notice is mailed during the first 90 days this policy is in effect and this is not a renewal or continuation policy, or

        (2) In all other cases.

3. After this policy is in effect for 90 days, or if this is a renewal or continuation policy, "we" may cancel for one or more of the reasons permitted under §3937.31 of the Ohio Revised Code:

    a. Misrepresentation by the "covered person" to "us" of any material fact in the procurement or renewal of the insurance or in the submission of claims thereunder; or

    b. Loss of driving privileges through suspension or expiration of the driver's or commercial driver's license of the named insured or any "family member" covered as a driver; provided that "we" shall continue the policy in effect but exclude by endorsement all coverages as to the person whose driver's license has been suspended or has expired, if the person is other than the named insured or the principal operator; or

    c. Nonpayment of premium; or

    d. The place of residence of the "covered person" or the state of registration or license of the insured automobile is changed to a state or country in which "we" are not authorized to write automobile coverage.

**NONRENEWAL**

If "we" decide not to renew or continue this policy, "we" will mail notice to the named insured shown in the Declarations at the address shown in this policy. Notice will be mailed at least 30 days before the

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

end of the policy period. If the policy period is other than one year, "we" will have the right not to renew or continue it only at an anniversary of its original effective date.

Every automobile insurance policy shall be issued for a policy period of not less than two years or guaranteed renewable for successive policy periods totaling not less than two years. As such, "we" will not send nonrenewal except just 23 months from the beginning of the policy. "We" have the right not to renew or continue only at 24-month intervals from the beginning of the policy without any break in coverages.

## AUTOMATIC TERMINATION

If "you" obtain other insurance on "your covered auto", any similar insurance provided by this policy will terminate as to that auto on the effective date of the other insurance.

## OTHER TERMINATION PROVISIONS

1. If the law in effect in "your" state at the time this policy is issued, renewed or continued:

   a. Requires a longer notice period;

   b. Requires a special form of or procedure for giving notice; or

   c. Modifies any of the stated termination reasons;

   "we" will comply with those requirements.

2. "We" may deliver any notice instead of mailing it. Proof of mailing of any notice shall be sufficient proof of notice.

3. If this policy is cancelled, "you" may be entitled to a premium refund. If so, "we" will send "you" the refund. The premium refund, if any, will be computed according to "our" manuals.

4. The effective date of cancellation stated in the notice shall become the end of the policy period.

B. The following provision is added to Part F:

## DECLARATIONS

By acceptance of this policy, "you" agree:

1. That the statements in the Declarations are "your" agreements and representations;

2. That this policy is issued in reliance upon the truth of such representations; and

3. That this policy embodies all agreements existing between "you" and "us" or any of "our" agents relating to this insurance.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN THE SAME.

## SPECIAL NOTICE - OHIO

**OHIO LAW REQUIRES US TO NOTIFY YOU OF THE FOLLOWING:** "Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud."

IP 407 OH (3/92)



# THE
# CINCINNATI INSURANCE COMPANIES

THE CINCINNATI INSURANCE COMPANY      THE CINCINNATI INDEMNITY COMPANY
THE CINCINNATI CASUALTY COMPANY      THE CINCINNATI LIFE INSURANCE COMPANY
THE CINCINNATI SPECIALTY UNDERWRITERS INSURANCE COMPANY

Mailing Address:      P.O. BOX 145496
CINCINNATI, OHIO 45250-5496
513-603-5992

## NOTICE OF PRIVACY PRACTICES

**OUR PRIVACY PLEDGE**
You have received this notice because you have a policy with us or you have applied for or purchased a product or service from our family of companies. We believe that your personal information should be respected and protected. For this reason, we are committed to protecting your personal information and using it only as appropriate to provide you with the best possible service, products and opportunities.

This privacy notice describes our information practices and policies. It applies to our relationship with you if you are an individual who inquires about or obtains products or services from us for personal, family or household purposes.

**INFORMATION WE COLLECT**
To provide our products or services, we may collect personal information about you from a variety of sources, including:

- information that comes from you during the application process or when visiting *www.cinfin.com*
- information about you from our affiliates, your independent insurance agent, governmental entities, consumer reporting agencies and other sources
- with your prior written consent, a medical professional who has treated you or members of your family

The type of information that we collect depends on the product or service requested, but may include:

- credit history
- motor vehicle reports
- inspections on your property
- claims history
- information concerning your previous insurance policies
- information to properly investigate and resolve any claims

**INFORMATION WE DISCLOSE TO THIRD PARTIES**
We do not sell your personal information to anyone. We do not disclose your personal information to third parties - people and companies that are not affiliated with us - for their own marketing purposes. For this reason, no "opt-out" is required. If we share some personal information about you with third parties without your specific authorization, it is to provide you with products and services that you request or expect from us, and as otherwise permitted by law.

For example, we may disclose the personal information we collect (as described above) as necessary to:

- service your policy, lease or account
- investigate and pay claims
- comply with state and federal regulatory requests or demands
- process other transactions that you request

To whom we make such disclosures depends on the product or service requested but may include:

- your independent insurance agent
- insurance regulators
- reinsurance companies
- consumer-reporting and fraud prevention agencies
- your mortgage or premium finance company
- insurance adjusters

We also may disclose personal information about you to companies that perform marketing services on our behalf or to other financial service providers with which we have joint marketing agreements. If information is disclosed, it will not result in telemarketing or direct mail marketing.

## INFORMATION SECURITY
We restrict access to personal information about you to those employees who need access to that information in order to provide products and services to you. We maintain physical, electronic and procedural safeguards to guard your personal information.

## A SPECIAL WORD ABOUT OUR INSURANCE INFORMATION PRACTICES
The information in this section applies to you only if you applied for or purchased an insurance product from us for personal, family or household purposes. This section is intended to supplement, but not replace, the other information contained in this Notice of Privacy Practices.

You have the right to access the personal information that we collect about you in connection with your insurance transactions with us. If you believe that any of that information is in error, you have the right to request us to correct it. Send your written request, including your policy number and the information about which you are concerned, to the address listed below.

To receive a more detailed notice regarding our insurance information practices and your information privacy rights, please contact us at the address or phone number given below.

## E-MAIL COMMUNICATIONS
We will not send you an e-mail in which we ask for personal information from you (such as password or Social Security number) or link you to our Web site to ask you for such information unless we reference a specific transaction or information that you have requested. If you receive an unsolicited or suspicious e-mail from The Cincinnati Insurance Companies, please forward the e-mail to us at *privacy@cinfin.com*.

## INFORMATION WE SHARE WITHIN OUR CORPORATE FAMILY
To serve you, we may share information about our experiences and transactions with you within our family of companies. Such information may include your payment or claims history or the types of insurance coverages you purchase from us.

The following companies comprise the Cincinnati Financial Corporation family of companies:

- Cincinnati Financial Corporation
- The Cincinnati Insurance Company
- The Cincinnati Casualty Company
- The Cincinnati Indemnity Company
- The Cincinnati Life Insurance Company
- CFC Investment Company
- The Cincinnati Specialty Underwriters Insurance Company
- CSU Producer Resources Inc.

This privacy notice applies to and is provided on behalf of all of the companies in the Cincinnati Financial Corporation family of companies with the exception of CFC Investment Company, which is governed by a separate and specific privacy policy.

## ONGOING ACCESS TO OUR PRIVACY POLICY
We will provide a notice of our privacy policy annually, as long as you have a continuing customer relationship with us. This policy may change from time to time, but you can always review our current policy by visiting our Web site at *www.cinfin.com* or by contacting us at:

> The Cincinnati Insurance Companies
> Attn: Regulatory & Consumer Relations - Privacy
> P.O. Box 145496
> Cincinnati, Ohio 45250-5496
> Phone: 888-744-2170 (toll free) or 513-603-5992
> E-mail: *privacy@cinfin.com*

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PERSONAL AUTO PLUS ENDORSEMENT

This endorsement modifies the insurance coverage provided by Personal Auto Policy FA4000T.

This endorsement and the insurance coverage provided hereunder are subject to all of the terms and conditions of the insurance policy to which it is attached, except as herein expressly modified.

A. This endorsement applies only to "you" and any "family member"; and

B. "Your covered auto" only includes those for which both "collision" and other than "collision" coverage applies, as indicated in the Declarations or elsewhere in the policy. However, "your covered auto" does not include:

    1.  Motor Homes;

    2.  Trailers;

    3.  Camper Bodies - Attached to Pickup Trucks;

    4.  Snowmobiles;

    5.  All-terrain vehicles;

    6.  Motorcycles;

    7.  Dune Buggies / Go-Carts;

    8.  Golf carts;

    9.  Exhibition Autos; or

    10.  Any other similar vehicle.

## INSURANCE COVERAGE

**I.  Death Benefit**

The amount "we" will pay on behalf of a "covered person" as referenced in Paragraph 5. of Supplementary Payments under Part A - Liability Coverage is amended to $5,000.

**II.  Airbag Replacement**

"We" will pay the reasonable and necessary costs of replacing an airbag in "your covered auto" if it deploys without being involved in an accident that would be subject to either "collision" or other than "collision" coverage under Part D - Coverage for Damage to Your Auto. No deductible applies to this insurance coverage feature.

**III.  Medical Payments Coverage**

"We" will double the applicable limit of insurance payable on behalf of a "covered person" for Part B - Medical Payments Coverage when a "covered person" sustains "bodily injury" in an accident while wearing a seat belt provided by the manufacturer of the vehicle in accordance with their instructions, or when using a children's safety restraint seat in accordance with state law.

**IV.  Transportation Expenses**

The first line of Part D - Coverage for Damage to Your Auto, Transportation Expenses, is deleted and replaced by:

In addition, "we" will pay, without application of a deductible, up to $50 per day, to a maximum of $1,500, for:

Any applicable limit of insurance referenced in the Declarations for Transportation Expenses is replaced by those referenced here. This coverage is for a vehicle of like kind and quality for "your covered auto" as is available.

**V. Towing and Labor Costs Coverage**

Towing and Labor Costs Coverage must be purchased and a charge shown on the Declarations Page for the additional coverage in this endorsement to apply.

If a limit of insurance is shown in the Declarations for Towing and Labor Costs Coverage, it is amended to the greater of:

**A.** $150; or

**B.** The limit of insurance stated in the Declarations.

**VI. Deductible Waiver**

In the event "your covered auto" is deemed to be a "total loss" after suffering an insured loss under Part D - Coverage for Damage to Your Auto, any applicable deductible will be waived.

The term "total loss" means direct and accidental loss, covered by this policy, to "your covered auto" where the cost to repair the damaged auto plus the salvage value equals or exceeds the cash value of the auto, unless otherwise defined by governing statute or regulation.

**VII. Trip Interruption**

**A. Insuring Agreement**

With respect to "your covered auto" "we" will pay, without application of a deductible, up to a maximum limit of $600 for reasonable additional expenses incurred by "you" or a "family member" for:

**1.** Transportation in the event of a mechanical or electrical breakdown of "your covered auto".

**2.** Lodging and meals in the event of:

    **a.** Direct and accidental loss to "your covered auto" caused by "collision" or other than "collision"; or

    **b.** Mechanical or electrical breakdown of "your covered auto".

This coverage applies only if:

**1.** The loss to, or mechanical or electrical breakdown of, "your covered auto" occurs more than 100 miles from "your" residence of domicile; and

**2.** "Your covered auto" is withdrawn from use for at least 24 hours.

**B. Limit of Insurance**

**1.** "Our" payment for Trip Interruption is limited to that period of time reasonably required to:

    **a.** Resume travel under a prearranged itinerary; or

    **b.** Return to "your" residence of domicile.

**2.** No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and Part D - Coverage for Damage to Your Auto.

**C. Other Sources of Recovery**

Any insurance "we" provide with respect to Trip Interruption shall be excess over any other collectible source of recovery including but not limited to:

**1.** Any coverage provided by:

    **a.** Vehicle warranties;

    **b.** Automobile clubs;

    **c.** Mechanical breakdown or similar plans; or

**2.** Any other source of recovery applicable to the loss.

Includes copyrighted material of ISO Properties, Inc., with its permission.

**VIII. Lock Replacement**

If the keys to "your covered vehicle" are lost or stolen, "we" will pay the necessary and reasonable cost of replacing the locks with like kind and quality, up to $1,500. But "you" must notify "us" in writing within 72 hours of the discovery of the loss. No deductible applies to this insurance coverage feature.

**IX. Children's Safety Restraint Seat Replacement**

"We" will pay, without deduction for depreciation, for replacement of any children's safety restraint seat installed in "your covered auto" that is damaged in a "collision" or other than "collision".

The amount of payment will be limited to the cost of a new children's safety restraint seat of the same kind and quality. No deductible applies to this insurance coverage feature.

**X. Full Glass Window Breakage Coverage**

"We" will pay, under Part **D** - Coverage for Damage to Your Auto, for glass window breakage due to an accident caused by either "collision" or other than "collision".

No deductible applies to this insurance coverage feature.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## SPECIAL LARGE DEDUCTIBLE ENDORSEMENT

This endorsement modifies insurance provided under the following:

**ALL COVERAGES FORMING A PART OF THE POLICY**

If both "your" home and automobile(s) are insured with The Cincinnati Insurance Company with $500 (or higher) deductibles on each the following deductible provision will apply:

I.   In the event of a loss arising out of a single occurrence for which two or more $500 (or higher) deductibles would otherwise have been individually applied, only one deductible will be applicable. The largest deductible "you" have selected and which would otherwise apply to the loss will be the maximum deductible "we" will apply to the combined loss.

II.  It is further understood and agreed that all of "your" personal policies insured with The Cincinnati Insurance Company which provide for a $500 (or higher) deductible will also be subject to the provisions of this endorsement.

III. No deductible will apply to a single occurrence resulting in a covered loss of $50,000 or greater. However, this provision does not apply to loss caused by:

   (1)  Earthquake;

   (2)  Landslide; or

   (3)  Wind, if "physical loss" occurs as a result of a "named storm".

   A "named storm" is a storm system that has been declared a hurricane or tropical storm and assigned a name by the National Hurricane Center or National Weather Service.

**HOA900 (1/08)**

# THE CINCINNATI INSURANCE COMPANY

**TO OUR POLICYHOLDERS:**

You may purchase Uninsured Motorists Property Damage coverage for any of your automobiles on which you have also purchased Uninsured Motorists Bodily Injury Coverage.

Uninsured Motorists property Damage coverage pays to repair damages to your car occurring as a result of your involvement in a collision with an Uninsured Motorist when that party is determined to be at-fault. There are two options for purchasing this coverage.

- If your Uninsured Motorists Bodily Injury coverage is written on a **per person / per occurrence basis** (commonly referred to as "split limits"), you must purchase a separate limit for Uninsured Motorists Property Damage. The available limits and premium charges are as follows:

  | Limit | Premium |
  |---------|---------|
  | $ 7,500 | $ 9 |
  | $10,000 | $10 |
  | $25,000 | $11 |

- If your Uninsured Motorists Bodily Injury coverage is written on **combined single limit basis**, you may choose to include Uninsured Motorists Property Damage coverage within the chosen limit for an additional charge. Contact your agency for the specific charge.

There is a $250 deductible applicable to this coverage. However, the Cincinnati Insurance Company will waive your deductible if you carry Collision coverage and Uninsured Motorist Property Damage coverage on the vehicle damaged by the Uninsured Motorist, and the damages exceed $200. In cases like this, you will save the cost of the deductible.

If you are interested in adding this protection to your Cincinnati Insurance Company auto policy, please contact your agent.

MI1528OH (10/11)



THE
**CINCINNATI INSURANCE COMPANY**

**AUTO
DECLARATIONS**

**POLICY NUMBER**
A01 0652180
Image 2

**Endorsement
Effective 08/06/2012**

Policy Period: From 11/29/2011 To 11/29/2012
12:01 a.m. Standard Time at the Address of the Named Insured

A01 0652180
**Named Insured & Address**
Pamela A Miller
6587 W KNOLLWOOD CIR
LOVELAND, OH 45140-8159

Please refer any questions to your agent:
Clark Theders Insurance Agency Inc
9938 Crescent Park Drive
PO BOX 62386
CINCINNATI, OH 45262-0386
(513)779-2800
**Agency 34053        Producer   Jean Mabry
                                3**

County of HAMILTON

Insurance is provided where a premium or 'Included' is shown for the coverage.

PAYOR - Account

| | |
|---|---|
| Billing Method: | Direct Bill |
| Current Pay Plan: | Quarterly Pay |
| Return Premium: | $48.00 |
| Remaining Installments: | |
| Total Premium: | $773.00 |

THIS IS NOT A BILL. You will receive a separate invoice if a premium charge or return is due.

**\*\*\* DESCRIPTION OF CHANGES \*\*\***
Deleting current car replacing with 2003 Mazda Tribute

By:

DDA (4/08)

08/06/2012
HOME OFFICE COPY

A01 0652180

1  of 3



**THE**
## CINCINNATI INSURANCE COMPANY

### AUTO
### DECLARATIONS

Policy Period: From 11/29/2011 To 11/29/2012
12:01 a.m. Standard Time at the Address of the Named Insured

**POLICY NUMBER**
A01 0652180
Image 2

**Endorsement**
**Effective 08/06/2012**

### YOUR COVERED AUTOS

| Veh | Ter | Year | Vehicle Description | Vehicle ID Number | Type Veh | Class | Stated Amount | Symbol (Other Than Collision / Collision), Rating Basis Value, Current Market Value |
|---|---|---|---|---|---|---|---|---|
| 2 | 2 | 2003 | MAZDA TRIBUTE LX | 4F2CZ941X3KM28709 | Priv Pass | 80211S | | 8 |

Garaging Location Veh 2 : 10929 FALLSTONE DR CINCINNATI, OH 45246-2373 HAMILTON
C9

### COVERAGES AND LIMITS OF INSURANCE

| COVERAGES | 2003 MAZDA TRIBUTE LX | |
|---|---|---|
| | LIMIT | PREMIUM |
| A1 Bodily Injury | | $203.00 |
| Each Person | $250,000 | |
| Each Accident | $500,000 | |
| Property Damage Liability | | $165.00 |
| Each Accident | $100,000 | |
| B1 Medical Payments | $10,000 | $29.00 |
| | Full | |
| C1 Uninsured Motorists (BI Only) | | $52.00 |
| Each Person | $250,000 | |
| Each Accident | $500,000 | |
| Uninsured Motorists (PD Only) | | $11.00 |
| Each Accident | $25,000 | |
| D Damage To Your Auto | | |
| Other Than Collision | | $45.00 |
| Actual Cash Value Less Deductible | $500 | |
| Collision | | $194.00 |
| Actual Cash Value Less Deductible | $500 | |

### ADDITIONAL COVERAGES

| | LIMIT | PREMIUM |
|---|---|---|
| Transportation Expense | | Included |
| Per Day/Maximum | $50/$1,500 | |
| Towing and Labor Costs | | $4.00 |
| Each D sablement | $150 | |
| Personal Auto Plus Coverage | | Flat Charge |
| **TOTAL** | | **$703.00** |

**THE CINCINNATI INSURANCE COMPANY**

**POLICY NUMBER**
A01 0652180
Image 2

## AUTO DECLARATIONS

**Endorsement Effective 08/06/2012**

Policy Period: From 11/29/2011 To 11/29/2012
12:0: a.m. Standard Time at the Address of the Named Insured

The following coverage(s) apply to all eligible vehicle(s) and/or individual(s) identified on the corresponding endorsement(s):

| Coverage | Premium |
|---|---|
| Personal Auto Plus Coverage | $70.00 |

The following credits have been applied to your policy:

Anti-Theft Discount
Package Credit
Passive Restraint Credit
Preferred Risk
Special Large Deductible Credit

| | |
|---|---|
| **TOTAL POLICY PREMIUM** | **$773.00** |

**OTHER COVERAGES AND ENDORSEMENTS**

| | |
|---|---|
| Personal Auto Policy FA4000 | FA4000T (4/08) |
| Uninsured Motorists Coverage for Bodily Injury and Property Damage Split Limits Ohio | CPA1023OH (10/11) |
| Amendment of Policy Provisions - Ohio | CPA1094OH (10/11) |
| Special Notice - Ohio | IP 407 OH (3/92) |
| Notice of Privacy Practices | MI1659 (4/09) |
| Personal Auto Plus Endorsement | CPA1419 (4/11) |
| Special Large Deductible Endorsement | HOA900 (1/08) |
| To Our Policyholders | MI1528OH (10/11) |

DDA (4/08)

08/06/2012
HOME OFFICE COPY

A01 0652180

3 of 3

# AUTO WORK SHEET

Insured:  Pamela A Miller

Policy Number:   A01 0652180

| | Driver Name | License Number | State | Date of Birth | Sex | Marital Status |
|---|---|---|---|---|---|---|
| 1 | PAMELA A MILLER | XXXX6592 | OH | 10/29/1955 | F | Single |
| 2 | | | | | | |
| 3 | | | | | | |
| 4 | | | | | | |
| 5 | | | | | | |
| 6 | | | | | | |
| 7 | | | | | | |
| 8 | | | | | | |

| | Principal or Occasional Operator | Year | Make | Model | At School w/o Vehicle | Driver Training | Good Student | Defensive Driver |
|---|---|---|---|---|---|---|---|---|
| 1 | Principal | 2003 | MAZDA | TRIBUTE L | No | No | No | No |
| 2 | | | | | | | | |
| 3 | | | | | | | | |
| 4 | | | | | | | | |
| 5 | | | | | | | | |
| 6 | | | | | | | | |
| 7 | | | | | | | | |
| 8 | | | | | | | | |

| Vehicle Number | Year | Make | Model | CC's | Anti-Theft Devices - Active - Passive | Passive Restraint - Driver Side Only - Both Front |
|---|---|---|---|---|---|---|
| 2 | 2003 | MAZDA | TRIBUTE L | None | Passive | Both Front |

MI1755 (4/08)

STATE OF NEW MEXICO
**OFFICE OF SUPERINTENDENT OF INSURANCE**
Mailing Address: P.O. Box 1689, Santa Fe, NM  87504-1689
Physical Address: 1120 Paseo de Peralta, Room 428, Santa Fe, NM  87501
Main Phone: (505) 827-4601; Main Fax (505) 827-4734; Toll Free: 1-855-4-ASK-OSI
www.osi.state.nm.us

**SUPERINTENDENT OF**                                   **Service of Process**
**INSURANCE**                                                   Room 432
John G. Franchini – (505) 827-4299                (505) 827-4241

**DEPUTY SUPERINTENDENT**
Robert Doucette – (505) 827-4439

February 3, 2017


Cincinnati Insurance Co.
Legal Division
P. O. Box 145496
Cincinnati, OH  45250-5496


Re: Pamela Miller vs. Cincinnati Insurance Company,
Docket No: D-820-CV-2017-00013

Dear Mr. President:

In accordance with the provisions of NMSA 1978, Sections 59A-5-31 & 59A-32, enclosed is a copy of a Summons, Complaint for Declaratory Judgment, Breach of Contract and Negligence, and Civil Case Information Sheet on the above styled cause.  Service was accepted on your behalf on February 3, 2017.


Respectfully,


John G. Franchini, Superintendent


Enclosure
CERTIFIED MAIL 7012 3460 0003 1668 7004

**EXHIBIT**
**B**

Skip to Main Content Logout My Account Search Menu New Civil Probate Family Search Refine Search Back   Location : Taos County   Images Help

# REGISTER OF ACTIONS
## CASE NO. D-820-CV-2017-00013

| | | |
|---|---|---|
| Pamela Miller v. Cincinnati Insurance Company | §<br>§<br>§<br>§<br>§<br>§ | Case Type: **Miscellaneous Civil**<br>Date Filed: **01/06/2017**<br>Location: **Taos County**<br>Judicial Officer: **McElroy, Jeff F.** |

### PARTY INFORMATION

|  |  | Attorneys |
|---|---|---|
| Defendant | Cincinnati Insurance Company |  |
| Plaintiff | Miller, Pamela | Robert Crollett<br>*Retained*<br>575-758-1155(W) |

### EVENTS & ORDERS OF THE COURT

**OTHER EVENTS AND HEARINGS**

| | | |
|---|---|---|
| 01/06/2017 | **Cause Of Actions**<br>Action Type | Declaratory Relief<br>Action |
| 01/06/2017 | **Cause Of Actions**<br>Action Type | Breach of Contract<br>Action |
| 01/06/2017 | **Cause Of Actions**<br>Action Type | Other (Negligence)<br>Action |
| 01/06/2017 | OPN: COMPLAINT<br>*Complaint for Declaratory Judgment, Breach of Contract and Negligence* | |
| 01/06/2017 | INFORMATION SHEET<br>*Civil Case Information Sheet* | |
| 02/13/2017 | ACCEPTANCE OF SERVICE | |

### FINANCIAL INFORMATION

| | |
|---|---|
| **Plaintiff** Miller, Pamela | |
| Total Financial Assessment | 132.00 |
| Total Payments and Credits | 132.00 |
| **Balance Due as of 02/22/2017** | **0.00** |

| | | | | |
|---|---|---|---|---|
| 01/09/2017 | Transaction Assessment | | | 132.00 |
| 01/09/2017 | File & Serve Payment | Receipt # TAOD-2017-45 | Miller, Pamela | (132.00) |

**EXHIBIT C**

STATE OF NEW MEXICO
COUNTY OF TAOS
EIGHTH JUDICIAL DISTRICT

PAMELA MILLER,

      Plaintiff,

v.                             No. D-820-CV-2017-00013

CINCINNATI INSURANCE COMPANY,

      Defendant.

## NOTICE OF FILING OF REMOVAL

PLEASE TAKE NOTICE that The Cincinnati Insurance Company, improperly named as Cincinnati Insurance Company, by and through its attorneys Chapman and Charlebois, P.C. (Donna L. Chapman and Jessica C. Singer), has filed a Notice of Removal in the United States District Court for the District of New Mexico. A true and correct copy of the Notice of Removal, attached to this Notice as Exhibit "1" was sent via email to:

Robert Crollett
Crollett & McDowell, P.A.
P.O. Box 1683
Taos, NM 87571
rc@cmlawnm.com
*Attorney for Plaintiff*

                    Respectfully submitted,

                    CHAPMAN AND CHARLEBOIS, P.C.

                    _____
                    Donna L. Chapman
                    Jessica C. Singer
                    P.O. Box 92438
                    Albuquerque, NM 87199
                    Tel: (505) 242-6000
                    donna@cclawnm.com
                    jessica@cclawnm.com
                    *Attorneys for Defendant The Cincinnati*
                    *Insurance Company*



EXHIBIT

I HEREBY CERTIFY THAT on this _____ day of February, 2017, I filed the foregoing electronically through the Odyssey File and Serve system, which caused the following counsel of record to be served by electronic means, as more fully reflected on the Notice of Electronic Filing, and that a copy was sent via e-mail to the following:

Robert Crollett
Crollett & McDowell, P.A.
P.O. Box 1683
Taos, NM 87571
rc@cmlawnm.com
*Attorney for Plaintiff*

Jessica C. Singer

2

STATE OF NEW MEXICO
COUNTY OF TAOS
EIGHTH JUDICIAL DISTRICT

PAMELA MILLER,

      Plaintiff,

v.                               No. D-820-CV-2017-00013

CINCINNATI INSURANCE COMPANY,

      Defendant.

## ENTRY OF APPEARANCE

    Chapman and Charlebois, P.C. (Donna L. Chapman and Jessica C. Singer), hereby enter their appearance on behalf of Defendant The Cincinnati Insurance Company, improperly named as Cincinnati Insurance Company. Copies of all documents pertaining to litigation in this matter should be sent to the undersigned attorneys.

                      Respectfully submitted,

                      **CHAPMAN AND CHARLEBOIS, P.C.**

                      _____

                      Donna L. Chapman
                      Jessica C. Singer
                      PO Box 92438
                      Albuquerque, NM  87199
                      505-242-6000
                      donna@cclawnm.com
                      jessica@cclawnm.com
                      *Attorneys for Defendant The Cincinnati Insurance Company*



EXHIBIT

E

tabbies

I hereby certify the foregoing was served
on the following counsel of record via the
Odyssey File & Serve system on this _____
day of February, 2017:

Robert Crollett
Crollett & McDowell, P.A.
P.O. Box 1683
Taos, NM 87571
rc@cmlawnm.com
*Attorney for Plaintiff*

_____
Jessica C. Singer

2

JS 44  (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
PAMELA MILLER

**DEFENDANTS**
CINCINNATI INSURANCE COMPANY

**(b)** County of Residence of First Listed Plaintiff   TAOS
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   CINCINNATI
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
ROBERT CROLLETT, CROLLETT & MCDOWELL, P.A.
P.O. BOX 1683
TAOS, NM 87571          575-758-1155

Attorneys *(If Known)*
DONNA L. CHAPMAN and JESSICA C. SINGER
CHAPMAN AND CHARLEBOIS, P.C.          505-242-6000
P.O. BOX 92438, ALBUQUERQUE, NM 87199

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ❏ 1 U.S. Government Plaintiff
- ❏ 2 U.S. Government Defendant
- ❏ 3 Federal Question *(U.S. Government Not a Party)*
- ☒ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ❏ 1 | Incorporated *or* Principal Place of Business In This State | ❏ 4 | ❏ 4 |
| Citizen of Another State | ❏ 2 | ❏ 2 | Incorporated *and* Principal Place of Business In Another State | ❏ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ❏ 3 | ❏ 3 | Foreign Nation | ❏ 6 | ❏ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☒ 110 Insurance<br>❏ 120 Marine<br>❏ 130 Miller Act<br>❏ 140 Negotiable Instrument<br>❏ 150 Recovery of Overpayment & Enforcement of Judgment<br>❏ 151 Medicare Act<br>❏ 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>❏ 153 Recovery of Overpayment of Veteran's Benefits<br>❏ 160 Stockholders' Suits<br>❏ 190 Other Contract<br>❏ 195 Contract Product Liability<br>❏ 196 Franchise | **PERSONAL INJURY**<br>❏ 310 Airplane<br>❏ 315 Airplane Product Liability<br>❏ 320 Assault, Libel & Slander<br>❏ 330 Federal Employers' Liability<br>❏ 340 Marine<br>❏ 345 Marine Product Liability<br>❏ 350 Motor Vehicle<br>❏ 355 Motor Vehicle Product Liability<br>❏ 360 Other Personal Injury<br>❏ 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY**<br>❏ 365 Personal Injury - Product Liability<br>❏ 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>❏ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>❏ 370 Other Fraud<br>❏ 371 Truth in Lending<br>❏ 380 Other Personal Property Damage<br>❏ 385 Property Damage Product Liability | ❏ 625 Drug Related Seizure of Property 21 USC 881<br>❏ 690 Other | ❏ 422 Appeal 28 USC 158<br>❏ 423 Withdrawal 28 USC 157<br><br>**PROPERTY RIGHTS**<br>❏ 820 Copyrights<br>❏ 830 Patent<br>❏ 840 Trademark | ❏ 375 False Claims Act<br>❏ 400 State Reapportionment<br>❏ 410 Antitrust<br>❏ 430 Banks and Banking<br>❏ 450 Commerce<br>❏ 460 Deportation<br>❏ 470 Racketeer Influenced and Corrupt Organizations<br>❏ 480 Consumer Credit<br>❏ 490 Cable/Sat TV<br>❏ 850 Securities/Commodities/ Exchange<br>❏ 890 Other Statutory Actions<br>❏ 891 Agricultural Acts<br>❏ 893 Environmental Matters<br>❏ 895 Freedom of Information Act<br>❏ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | **LABOR**<br>❏ 710 Fair Labor Standards Act<br>❏ 720 Labor/Management Relations<br>❏ 740 Railway Labor Act<br>❏ 751 Family and Medical Leave Act<br>❏ 790 Other Labor Litigation<br>❏ 791 Employee Retirement Income Security Act | | ❏ 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>❏ 950 Constitutionality of State Statutes |
| ❏ 210 Land Condemnation<br>❏ 220 Foreclosure<br>❏ 230 Rent Lease & Ejectment<br>❏ 240 Torts to Land<br>❏ 245 Tort Product Liability<br>❏ 290 All Other Real Property | ❏ 440 Other Civil Rights<br>❏ 441 Voting<br>❏ 442 Employment<br>❏ 443 Housing/ Accommodations<br>❏ 445 Amer. w/Disabilities - Employment<br>❏ 446 Amer. w/Disabilities - Other<br>❏ 448 Education | **Habeas Corpus:**<br>❏ 463 Alien Detainee<br>❏ 510 Motions to Vacate Sentence<br>❏ 530 General<br>❏ 535 Death Penalty<br>**Other:**<br>❏ 540 Mandamus & Other<br>❏ 550 Civil Rights<br>❏ 555 Prison Condition<br>❏ 560 Civil Detainee - Conditions of Confinement | | **SOCIAL SECURITY**<br>❏ 861 HIA (1395ff)<br>❏ 862 Black Lung (923)<br>❏ 863 DIWC/DIWW (405(g))<br>❏ 864 SSID Title XVI<br>❏ 865 RSI (405(g))<br><br>**FEDERAL TAX SUITS**<br>❏ 870 Taxes (U.S. Plaintiff or Defendant)<br>❏ 871 IRS—Third Party 26 USC 7609 | |
| | | | **IMMIGRATION**<br>❏ 462 Naturalization Application<br>❏ 465 Other Immigration Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ❏ 1 Original Proceeding
- ☒ 2 Removed from State Court
- ❏ 3 Remanded from Appellate Court
- ❏ 4 Reinstated or Reopened
- ❏ 5 Transferred from Another District *(specify)*
- ❏ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. §§ 1331, 1441 and 1446
Brief description of cause:
personal injury, UM/UIM

## VII. REQUESTED IN COMPLAINT:
❏ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ❏ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE                                DOCKET NUMBER

DATE

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #            AMOUNT            APPLYING IFP            JUDGE            MAG. JUDGE

EXHIBIT
tabbies
F