IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

PAMELA MILLER,

    Plaintiff,

v.                                                                                          Civ. No. 17-00271 SCY/JHR

CINCINNATI INSURANCE COMPANY,

    Defendant.

## MEMORANDUM AND OPINION ORDER

THIS MATTER comes before the Court on the parties' cross-motions for declaratory judgment. Docs. 16, 17. Plaintiff filed her Complaint for Declaratory Judgment, Breach of Contract, and Negligence in New Mexico state district court on January 6, 2017. Doc. 1-1. Defendant removed the action to federal court on February 28, 2017. Doc. 1. Plaintiff's claim for declaratory judgment is premised on allegations that Defendant refused to negotiate settlement of Plaintiff's claim for underinsured motorist ("UM") coverage pursuant to her insurance policy with Defendant. Defendant denied Plaintiff's claim for UM coverage due to Plaintiff's failure to timely make a claim for UM coverage pursuant to the terms of the policy. Having reviewed the briefing, the relevant law, and being otherwise fully advised, the Court will grant Plaintiff's Motion in part and deny Defendant's Motion.

    **I.     PRELIMINARY PROCEDURAL MATTTERS**

Before getting into the substance of the parties' arguments, the Court will first address whether the state or the federal declaratory judgment act applies. Second, the Court then considers what type of relief is available under the Declaratory Judgment Act.

First, some confusion exists among the parties as to whether the Court's consideration of Plaintiff's claim for declaratory judgment is controlled by the federal Declaratory Judgment Act,

28 U.S.C. § 2201-2202, or New Mexico's Declaratory Judgment Act, NMSA 1978 § 44-6-1 to -15.  Importantly, Defendant's removed this case to federal Court on the basis of the Court's diversity jurisdiction. A federal court exercising jurisdiction over a case based on diversity of citizenship looks to federal procedural law and to state substantive law. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 72 (1938). The federal Declaratory Judgment Act is procedural. *Farmers Alliance Mut. Ins. Co. v. Jones*, 570 F.2d 1384, 1386 (10th Cir. 1978). It "does not create substantive rights for parties…[but] merely provides another procedure whereby parties may obtain judicial relief." *Id.* Accordingly, while New Mexico law will control the substantive issues of the case, the federal Declaratory Judgment Act will control the procedure governing Plaintiff's claim for declaratory judgment.

Second, although the parties have filed cross-motions for declaratory judgment, the Court clarifies that the Declaratory Judgment Act does not contemplate "motions for declaratory judgment."  Under the Act, a court "may declare the rights and other legal relations of any interested party seeking such a declaration" where a party files "an appropriate pleading."  28 U.S.C. § 2201(a). The Federal Rules "govern the procedure for obtaining a declaratory judgment under [the Act]." Fed. R. Civ. P. 57.  As such, "the requirements of pleading and practice in actions for declaratory relief are exactly the same as in other civil actions." *Thomas v. Blue Cross and Blue Shield Ass'n*, 594 F.3d 823, 830 (11th Cir. 2010).  When faced with a motion for declaratory judgment, courts therefore often construe the motion as a motion for summary judgment on a declaratory judgment action.  *See e.g.*, *Kam-Ko Bio-Pharm Trading*, 560 F.3d 935, 943 (9th Cir. 2009) (upholding the district court's decision to construe a motion for declaratory judgment as a motion for summary judgment); *Int'l Bhd. of Teamsters v. E. Conference of Teamsters*, 160 F.R.D. 452, 456 (S.D.N.Y. 1995) (citation omitted) (stating that

"[t]he only way plaintiffs' motion [for declaratory relief] can be construed as being consistent with the Federal Rules is to construe it as a motion for summary judgment on an action for a declaratory judgment."). Consistent with these authorities the Court construes the parties' cross-motions for declaratory judgment as cross-motions for partial summary judgment on Plaintiff's claim for declaratory judgment.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), this Court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of "show[ing] that there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once the movant meets this burden, Rule 56(c) requires the non-moving party to designate specific facts showing that there is a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

"An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way. An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Thom v. Bristol Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (internal citation omitted). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ." Fed. R. Civ. P. 56(c)(1)(A). All material facts set forth in the motion and response which are not specifically controverted are deemed undisputed. D.N.M.LR-Civ. 56.1(b).

When reviewing a motion for summary judgment, the court should keep in mind three principles. First, the court's role is not to weigh the evidence, but determine whether a genuine issue exists as to material facts requiring a trial. *See Liberty Lobby*, 477 U.S. at 249. Second, the court must resolve all reasonable inferences and doubts in favor of the non-moving party, and construe all evidence in the light most favorable to the non-moving party. *See Hunt v. Cromartie*, 526 U.S. 541, 550–55 (1999). Third, the court cannot decide any issues of credibility. *See Liberty Lobby*, 477 U.S. at 255. "[T]o survive the . . . motion, [the nonmovant] need only present evidence from which a jury might return a verdict in his favor." *Id*. at 257.

### III. BACKGROUND

Unless otherwise noted, the following are the undisputed material facts. In November 2011, Defendant issued Plaintiff an automobile insurance policy. Defendant's Ex. C, Doc. 16 at 20. The policy was issued by an Ohio insurance agent. *Id.* The policy indicates that Plaintiff resided in Ohio and that the vehicle would be garaged in Ohio. *Id.* It is therefore undisputed that the policy was issued in Ohio. This is material because the policy included a choice of law provision stating that the policy should be "construed and interpreted in conformity with the laws of the state in which it was issued." *Id.* at 39. The policy included a limitation on the timeframe for which Plaintiff could bring a claim for UM coverage. Specifically, the policy stated that

> Any claim for Uninsured Motorist Coverage must be brought within three (3) years of the date of the accident causing "bodily injury" or one (1) year after the date the liability insurer of the "uninsured motor vehicle" becomes insolvent, whichever is later.

*Id.* at 45.

On June 1, 2012, Plaintiff was involved in a motor vehicle accident in Taos, New Mexico. Doc. 17 at 2, ¶ 1; Doc. 19 at 1, ¶ 1. The driver of the other vehicle, Stephen Salandre, was insured by GEICO with liability limits of $25,000 for bodily injury. Doc. 17 at 2, ¶ 2; Doc.

4

19 at 2, ¶ 2. Approximately one day after the accident, Plaintiff notified Defendant of the accident and on June 4, 2012, Defendant took Plaintiff's recorded statement regarding the incident. Doc. 17 at 2, ¶ 4; Doc. 19 at 2, ¶ 4. Though largely immaterial to the present issues, Defendant and GEICO subsequently engaged in a protracted disagreement as to who was at fault for the accident. Their disagreement was ultimately submitted to arbitration and the arbitrator determined that GEICO was not liable for Plaintiff's injuries and that Defendant was 100% liable for damage to Salandre's vehicle. Doc. 17 at 3, ¶ 8; Doc. 19 at 2, ¶ 8.

Of greater relevance, after the arbitrator's decision, Plaintiff personally sought relief against GEICO and filed suit against Salandre on July 8, 2014. Doc. 17 at 3-4, ¶ 10; Doc. 19 at 3, ¶ 10. On October 15, 2015, GEICO offered to settle the case for Salandre's policy limit of $25,000. Doc. 17 at 4, ¶ 13; Plaintiff's Ex. J. Plaintiff contends that GEICO attached a certified copy of the policy when it made its offer and that this was the first time that Plaintiff became aware of the other driver's policy limits. Doc. 17 at 2, ¶ 1. Plaintiff's insurance policy required her to obtain written consent from Defendant prior to entering into any settlement agreement with the opposing driver or his insurance company. Doc. 17 at 4-5, ¶ 16; Doc. 19 at 3, ¶ 16. Defendant, on other hand, contends that Plaintiff had previously received a copy of an affidavit from GEICO disclosing Salandre's policy limits in July 2014. Doc. 16 at 2, ¶ 2. Regardless, on October 22, 2015, Defendant gave Plaintiff consent to settle with GEICO. Doc. 17 at 5, ¶ 18; Doc. 19 at 4, ¶ 18.

On May 25, 2016, Plaintiff submitted a claim for underinsured motorist coverage to Defendant. Doc. 17 at 5, ¶ 20; Doc. 19 at 4, ¶ 20. On September 26, 2016, Plaintiff's counsel corresponded with Defendant regarding the status of her claim. Plaintiff's Ex. 6, Doc. 17-26; Doc. 17 at 5, ¶ 21. According to Plaintiff's affidavit, on October 4, 2016, Defendant responded

5

with language in Plaintiff's insurance policy stating that Plaintiff was required to bring any claim for underinsured motorist coverage with three years of the date of the accident or one year after the date the liability insurer of the uninsured motor vehicle became insolvent, whichever was later. Plaintiff's Ex. 1, Doc. 17-1; Doc. 17 at 5-6, ¶ 22; Doc. 19 at 4, ¶ 22.  Defendant accordingly took the position that Plaintiff's claim was nineteen months too late and therefore untimely.  Doc. 16 at 3, ¶ 11. After various correspondence between Plaintiff's counsel and Defendant, Defendant offered to settle Plaintiff's claim.  Doc. 17 at 6, ¶ 24; Doc. 19 at 4, ¶ 24. Plaintiff ultimately rejected Defendant's offer and filed the present suit on January 6, 2017. Doc. 17-1; Doc. 17 at 6, ¶ 25; Doc. 19 at 5, ¶ 25.

IV.     ANALYSIS

The issues raised by the parties' cross-motions are largely similar.  First, Plaintiff and Defendant agree that in this diversity action, the Court is to apply New Mexico choice of law rules.  *See Tucker v. R.A. Hanson Co., Inc.*, 956 F.2d 215, 217 (10th Cir. 1992) ("When deciding diversity cases, federal courts apply the law of the state in which they are sitting….This includes applying the state choice of law rules."). The parties disagree, however, as to whether New Mexico's choice of law jurisprudence mandates application of New Mexico or Ohio law to their present dispute.  Plaintiff contends that the three year time-to-sue provision for UM claims in her insurance contract violates New Mexico public policy and therefore precludes application of Ohio law and renders the provision void and unenforceable. Plaintiff alternatively argues that Defendant should be equitably estopped under New Mexico law from enforcing the provision due to its failure to comply with its duty to disclose.  For these reasons, Plaintiff contends that New Mexico's six year statute of limitation period for asserting UM claims applies.

Defendant, on the other hand, contends the time-to-sue provision does not violate New Mexico public policy and, therefore, Ohio law governs the parties' present dispute. Defendant further contends that contractual provisions limiting an individual's ability to bring UM claims to three years from the date of the accident are valid and enforceable under Ohio law. Plaintiff, assuming for purposes of argument that Ohio law applies, contends that by not raising the time-to-sue provision with Plaintiff during the course of its communications with Plaintiff, Defendant waived the three year time-to-sue provision. Doc. 17 at 16 - 18. Plaintiff further argues that her reasonable interpretation of the insurance contract precludes application of the time-to-sue provision. Doc. 17 at 19. Finally, Plaintiff contends that the time-to-sue provision is unreasonable and unenforceable under Ohio law. Doc. 17 at 22.

As an initial matter, the Court notes that in cases arising under diversity jurisdiction, the Court's task is not to reach its own judgment regarding the state law at issue, but simply to "ascertain and apply the state law." *Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 665-66 (10th Cir. 2007) (internal quotation marks omitted). Where no controlling state law exists, the federal court must endeavor to predict what the state's highest court would do if it were faced with the same facts and issues. *Stickley v. State Farm Mut. Auto Ins. Co.*, 505 F.3d 1070, 1077 (10th Cir. 2007). In making that prediction, a court considers "analogous decisions by the [state] Supreme Court, the decisions of the lower courts in [the state], the decisions of the federal courts and of other state courts." *Phillips v. State Farm Mut. Auto. Ins. Co.*, 305 F.3d 1107, 1118 (10th Cir. 2002).

Under New Mexico law, "the law to be applied to a particular dispute may be chosen by the parties through a contractual choice-of-law provision." *Fiser v. Dell Computer Corporation*, 2008-NMSC-046, ¶ 7, 188 P.3d 1215. The choice of law provision in the present contract

provided that "[i]t is understood and agreed that this policy and all of its terms shall be construed and interpreted in conformity with the laws of the state in which it is issued." Doc. 16 at 39.[1] As noted above, it is undisputed that the insurance policy was issued in Ohio. Thus, at first glance, it would appear that Ohio law governs the parties' present dispute.

That said, New Mexico's rules governing choice of law provisions further hold that if application of the law of the foreign jurisdiction would offend a tenant of New Mexico public policy, the Court may apply New Mexico law. *See Flemma v. Halliburton Energy Services, Inc.*, 2013-NMSC-022, ¶ 12, 303 P.3d 814. Because New Mexico "has a strong public policy of freedom to contract," New Mexico courts will respect the parties' agreement unless it "clearly contravene[s] some law or rule of public morals." *Id.* at ¶ 18; *see also Fiser*, 2008-NMSC-046, ¶ 7 ("New Mexico respects party autonomy; the law to be applied to a particular dispute may be chosen by the parties through a contractual choice-of-law provision….However, when application of the law chosen by the parties offends New Mexico public policy, our courts may decline to enforce the choice-of-law provision and apply New Mexico law instead."). As stated in *Shope v. State Farm Ins. Co.*, enforcement of the contract provision must violate "fundamental principles of justice" in order to override application of the law of the jurisdiction where the contract was issued. 1996-NMSC-052, ¶ 7, 925 P.2d 515. A simple issue of differing contractual interpretation principles between New Mexico and the foreign jurisdiction is not sufficient. *Id.* at ¶ 9. Instead, "[t]o overcome the rules favoring the place where a contract is executed, there must be a countervailing interest that is fundamental and separate from general policies of contract

---

[1] The choice of law provision's language closely tracks the doctrine of *lex loci contractus* which holds that "the validity of a contract must be determined by the law of the state in which it was made." *Flemma v. Halliburton Energy Services*, 2013-NMSC-022, ¶ 14, 303 P.3d 814. Accordingly, the Court finds no relevant distinction between the parties' choice of law provision and the caselaw interpreting this doctrine.

interpretation." *Id.* at ¶ 9; *State Farm Mut. Auto. Ins. Co. v. Ballard*, 2002-NMSC-030, ¶ 9, 54 P.3d 537.

With this in mind, the issue before the Court is whether the time-to-sue provision would so offend New Mexico public policy that its application would violate fundamental principles of justice and require overriding the presumption that Ohio law applies to this dispute. As noted above, the relevant language of the provision required Plaintiff to bring her UM claim within three years from the date the accident. New Mexico courts have not specifically invalidated this type of provision in an insurance contract issued in another state. Based on the Court's review of New Mexico law, however, the Court concludes that the New Mexico Supreme Court would invalidate this provision and apply New Mexico law were this issue before it.

Unless there is a contractual provision to the contrary, New Mexico law provides a six year statute of limitations for UM claims. *Ellis v. Cigna Prop. & Casualty Co.*, 1999-NMSC-034, ¶¶ 1, 6, 989 P.2d 429; *Whelan v. State Farm Mut. Auto. Ins. Co.*, 2014-NMSC-021, ¶ 13, 329 P.3d 646 ("In the absence of a contrary provision in the insurance policy, we have held that the period of limitation for UM/UIM legal actions should be the statutory period of limitation for contract actions, six years."). New Mexico law further provides that this statute of limitations begins to run upon the breach of the insurance contract. *Brooks v. State Farm Ins. Co.*, 2007-NMCA-033, ¶ 3, 154 P.3d 697. The fact that New Mexico law provides a six year statute of limitations on UM claims and that the statute of limitations begin to accrue upon breach of the insurance contract is not indicative, by itself, that the present provision offends New Mexico public policy to the extent required to override the choice of law provision. As noted by the *Brooks* court, insurers may include appropriate time-to-sue limitations in an insurance contract. *Brooks*, 2007-NMCA-033, ¶¶ 3, 18. Such limitations, however, must not be in conflict with

statutory law or the public policy of New Mexico. *See Sandoval v. Valdez*, 1978-NMCA-016, ¶ 11, 580 P.2d 131 (reviewing a time-to-sue provision as "an exclusionary provision of [the] insurance contract, enforceable only if it is not in conflict with statutory law or public policy of New Mexico."). "[G]enerally, courts will enforce contractual time limitation provisions when the provisions satisfy a two-pronged test: (1) the limitations period must be reasonable; and (2) the provision must be clear and unambiguous." *Whelan*, 2014-NMSC-021, ¶ 13.

Recently, however, the New Mexico Supreme Court held that exclusionary provisions "based solely on the date of the accident without consideration of the actual accrual of the right to make a UM/UIM claim [are] unreasonable and unenforceable as a matter of law." *Whelan*, 2014-NMSC-021, ¶ 3. The particular exclusionary provision in *Whelan* barred suit unless instituted within six years from the date of the accident. *Id.* at ¶ 6. The New Mexico Supreme Court took no issue with the "lengthy six year period" but instead stated that it was the "triggering event, the date of the accident instead of the date of the accrual of the cause of action, that concerned [it]." *Id.* at ¶ 15. The court explained that it could "find no reasonable justification for a limitations period that may bar a claim before a lawful cause of action accrues. Our Legislature does not allow its own statutes of limitations to bar causes of actions that have yet to accrue." *Id.* The court therefore concluded "that a time-to-sue provision in a UM/UIM contract that is triggered solely by the date of the accident is unreasonable and unenforceable." *Id.* at ¶ 19.

Because the New Mexico Supreme Court was ruling on the enforceability of a provision in a New Mexico insurance contract, the *Whelan* decision is not automatically dispositive of the issue before the Court. That said, the New Mexico Supreme Court's reasoning, as well as its reliance on certain prior New Mexico Court of Appeals decisions, is certainly indicative as to

how it would view exclusionary provisions tied to the date of the accident contained in insurance contracts not issued in New Mexico. For instance, the *Whelan* court relied on a prior New Mexico Court Appeals case that invalidated a time-to-sue provision in a Colorado insurance contract which precluded the insured from bringing suit unless one year from the date of the accident the insured had brought suit against the alleged tortfeasor. *Id.* at ¶ 14 (citing *Sandoval v. Valdez*, 1978-NMCA-016, 580 P.2d 131). The *Whelan* court emphasized that the provision in *Sandoval* was invalid because "it was shorter than the statutory limitations period for bringing a personal injury suit" and that such limitation conflicted with the purpose of UM statute which was "to protect the insured from the uninsured, not the insurer from the insured." *Id.* (citing *Sandoval*, 1978-NMCA-016, ¶¶ 16, 23-24.

More importantly, the New Mexico Supreme Court in *Whelan* discussed at length the New Mexico Court of Appeals' *Brooks* decision in which the court held that the running of the statute of limitations on UM claims begins when the insurer refuses to pay the claim. *See Whelan*, 2014-NMSC-021, ¶ 11 (citing *Brooks*, 2007-NMCA-033). As noted by *Whelan*, although the *Brooks* court specifically reaffirmed that an insurer may include a provision limiting the timeframe for which the insured may bring UM claims in the insurance contract, the *Brooks* court took particular issue with triggering the running of the statute of limitations on the date of the accident. The court stated that "the extent of the tortfeasor's underinsured status and the insurer's liability for that amount may not be immediately apparent to the innocent insured." *Brooks*, 2007-NMCA-033, ¶ 16. The court therefore characterized it as "fundamentally unfair" to time-bar an insured's claim where the "insured may not be aware until sometime after the accident that a claim against her underinsured motorist insurer must be pursued." *Id.*

11

The *Brooks* court's characterization of exclusionary provisions tied to the date of the accident as "fundamentally unfair" is crucial to the Court's review of the current provision. As noted above, New Mexico courts will refuse to apply a foreign jurisdiction's law where doing so would violate fundamental principles of justice. *See Shope*, 1996-NMSC-052, ¶ 7. In ascertaining how the New Mexico Supreme Court would rule on the current provision, given the *Whelan* decision, and its discussion of *Brooks* and *Sandoval*, it is readily apparent that the court finds exclusionary provisions that are tied to the date of the accident contrary to New Mexico law and offensive to public policy because of the possibility that such provisions would preclude suit before the insured's cause of action has accrued. *See Whelan*, 2014-NMSC-021, ¶¶ 15-16. The Court accordingly concludes the New Mexico Supreme Court would apply New Mexico law in lieu of the parties' choice of law provision and hold that the exclusionary provision is invalid and unenforceable.

In the absence of a valid and enforceable exclusionary provision, New Mexico's default statute of limitations of six years applies to Plaintiff's claim. Because Defendant denied Plaintiff's claim for UM coverage in October 2016, there is no dispute that Plaintiff's cause of action for breach of contract for denying her UM claim is timely. Furthermore, because the Court grants Plaintiff's Motion to the extent that Plaintiff sought a determination as to whether the exclusionary provision is unenforceable, the Court need not address Plaintiff's remaining issues as they were contingent upon a finding that provision did not violate New Mexico law.

V.     **CONCLUSION**

Based on the foregoing, it is hereby ordered that:

- Plaintiff's Motion for Declaratory Judgment (Doc. 17) (recharacterized as a motion for partial summary judgment on Plaintiff's declaratory judgment cause of action) is

GRANTED IN PART. The exclusionary provision limiting Plaintiff's time to bring a cause of action to three years from the date of the accident violates New Mexico public policy and is therefore unenforceable.

- Defendant's Motion for Declaratory Judgment (recharacterized as a motion for partial summary judgment on Plaintiff's declaratory judgment cause of action) is DENIED.

**IT IS SO ORDERED.**

_____
UNITED STATES MAGISTRATE JUDGE
Sitting by Consent